**SOUTHEASTERN METALS CO., Inc., a Corporation, Plaintiff,**

v.

**AMERICAN SEATING COMPANY, a Corporation, Defendant.**

**Civ. A. No. 65–388.**

United States District Court
N. D. Alabama, S. D.

Jan. 31, 1968.

Hugh P. Carter, of Jennings, Carter & Thompson, Birmingham, Ala., for plaintiff.

Douglas Arant and Macbeth Wagnon, Jr., of Bradley, Arant, Rose & White, Birmingham, Ala., for defendant; Jerome F. Fallon, of Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., of counsel.

DANIEL HOLCOMBE THOMAS, Chief Judge.

This action arises under the Patent Laws of the United States, 35 U.S.C., and was invoked by the plaintiff pursuant to the Declaratory Judgment Statutes of the United States. This Court has jurisdiction of the parties and of the subject matter.

The plaintiff, Southeastern Metals Company, Inc., is an Alabama Corporation having its principal place of business in Birmingham, Alabama. After being threatened by the defendant with infringement of patent No. 3,111,344 plaintiff instituted this declaratory judgment action requesting the Court to find the said patent invalid and not infringed. Subsequent to the filing of the complaint, patent No. 3,173,723 issued to the defendant; and in addition to counterclaiming for infringement of the said '344 patent, defendant also claimed infringement of the said '723 patent.

The defendant, American Seating Company, is a corporation of the state of New Jersey and has a principal place of business in Grand Rapids, Michigan. The defendant is qualified to do business and is doing business within the State of Alabama and within the Northern District of Alabama.

Patent No. 3,111,344, entitled "CHAIR", issued November 19, 1963, upon an application filed February 5, 1962, by Alfred C. Hoven, Walter E. Nordmark and Gerald F. Thompson, who assigned said patent to the defendant corporation. Patent No. 3,173,723 issued under date of March 16, 1965, upon an application filed June 8, 1964, by Alfred C. Hoven and Walter E. Nordmark, who assigned said patent to the defendant corporation. Defendant has been the owner of said patents throughout all times pertinent to this litigation and still owns said patents.

The '344 patent in suit contains 14 claims, but by agreement and stipulation of the parties only claim 2 thereof is here charged to be infringed by the accused chairs made and sold by plaintiff. Claim 2 of the '344 patent is as follows:

"In a chair: a supporting frame; and an integral, hollow, resilient plastic chair back mounted on the frame."

The '723 patent contains 5 claims and the defendant asserts all of the claims against the accused chairs being made and sold by plaintiff. The claims of the '723 patent are as follows:

1. In combination a seat panel having a frame member at its forward underside providing a pair of sockets and having at its rear underside a frame providing a cross rib and a rear wall, said rib and wall being provided with a pair of aligned recesses, a chair top assembly equipped with a pair of tubes terminating in ends fitting said sockets, said tubes being also received within said frame recesses, said assembly also being provided with a cross bar abutting said cross rib and the two cross ribs being provided with aligned

openings, and fastening means extending through said openings to complete the union of said panel and top assembly.

2. The structure of claim 1 in which said seat panel is formed of plastic, and said cross rib is provided with thickened portions about said openings.

3. In combination, a plastic seat panel having a frame member at its forward underside providing a pair of sockets and having at its rear underside a frame providing a cross rib and a rear wall, said rib and wall being provided with a pair of aligned recesses, and a chair top assembly equipped with a pair of tubes terminating in points fitting said sockets, said tubes being also received within said frame recesses, said assembly being provided with a cross bar abutting said cross rib of said seat panel, and the two cross bars being provided with aligned rivet openings, and rivets extending through said openings to complete the union of said panel and top assembly.

4. The structure of claim 3 in which said seat panel is provided with reinforcing strips extending over said tubes.

5. The structure of claim 3 in which said seat panel is provided with forwardly-extending walls adjacent said sockets and bearing against said tubes to brace said tubes against lateral movement.

On the issue of validity of the '344 patent, the plaintiff relied upon the following prior art patents (PX 5):

| U. S. Patent No. | Date | Patentee |
|---|---|---|
| 1,830,570 | November 3, 1931 | Smith |
| 2,458,890 | January 11, 1949 | Booth |
| 2,764,228 | September 25, 1956 | Donohue |
| 2,824,602 | February 25, 1958 | Collins et al. |
| 2,847,062 | August 12, 1958 | Henrikson et al. |
| 3,043,624 | July 10, 1962 | Mason |
| 3,055,708 | September 25, 1962 | Baermann |
| 3,091,497 | May 28, 1963 | Houser (filed July 12, 1961) |
| 3,103,082 | September 10, 1963 | Baermann |

| Foreign Patents (PX 6) | Date | Patentee |
|---|---|---|
| 912,259 (German) | July 8, 1949 | Speith |

In addition to the above prior art, plaintiff cited against the '344 patent a prior art chair, namely, a chair having a hollow sheet metal back, PX 7, and the large and small plastic automobiles identified in the Brotheim deposition as Brotheim Exhibits 5 and 9. Other instances or prior use and sale of blow molded toy items appearing in the Brotheim deposition are also relied upon.

The prior art relied upon at the trial against the '723 patent by the plaintiff was a publication from "MODERN PLASTICS," September 1961, pages 94, 95 and 208, (PX 5 "Pub.") In addition to this publication, plaintiff relies upon an orange colored chair introduced with the deposition of Troccoli as Exhibit T-1, and a prior art chair manufactured by Fixtures Manufacturing Company, PX 25, together with a brochure relating thereto, PX 24. Also the patents set forth above are relied upon to show the state of the art.

The chair of the '344 patent, insofar as claim 2 is concerned, comprises an "integral" hollow back made of resilient plastic material. The back is supported on a chair frame. The '344 patent states that the seat of the chair is "blow-molded in much the same manner as the familiar squeeze bottles in use today". (Patent, column 2, lines 8 to 10). The '344 patent teaches that the back of the chair as well as the seat is so blow molded. The patent further teaches that the back is desirably molded of a plastic material such as polyethylene and, after curing, such back or seat, as the case may be, possesses a high integrity and because of its hollowness a considerable degree of resilience which makes for comfort in the chair. (Patent, column 2, lines 15 to 19.)

■ Claim 2 of the '344 patent includes the word "integral". However, the word "integral" nowhere appears in the specification of the patent as applied for or as issued, and such word was not inserted into any of the claims of the patent until the amendment filed in the Patent Office on April 5, 1963. (PX 1, file wrapper of the '344 patent, page 59). Up until April 5, 1963, the patentees were requesting of the Patent Office the following claim, originally numbered 4 as the application was filed, as follows:

"In a chair: a supporting frame; and a hollow, resilient plastic chair back mounted on the frame." (PX 1, page 8.)

Therefore, the Court finds that at the time of the filing of the aplication resulting in the '344 patent, the patentees placed no importance upon their chair back being "integral". Until the filing of said amendment on April 5, 1963, they were requesting of the Patent Office the combination which included a chair embodying a supporting frame and a hollow, resilient plastic chair back mounted on the frame, whether or not the said back was "integral".

From a study of the prior art as a whole, the Court finds that the '344 patent, claim 2, is not a pioneer invention. That is to say, prior to the invention date of '344, it was old in the seating art to mount plastic backs upon chair frames. It likewise was old in the seating art to mount hollow backs, both of metal and plastic, on tubular frames. Polyethylene, a resilient plastic material, was previously known by the art in general, and by the defendant in particular, to be a good and suitable material for forming seats and backs of chairs, as witness the defendant's own Henrikson et al. patent above mentioned, which speaks of using this identical material for seats and backs.

In view of the exhibits, prior patents and testimony as a whole, the Court therefore concludes that with respect to the validity of the '344 patent, claim 2, it is only necessary for the Court to determine:

(a) whether the prior art shows the combination which includes an "integral" back of the kind further defined in claim 2, and therefore anticipates claim 2 (35 U.S.C. § 102) ; or

(b) whether or not such chair backs as are shown in the prior art could be made "integral" without the exercise of invention within the meaning of 35 U.S. C. § 103 ; or

(c) whether, under the facts of the case, the patent in invalid under the doctrine of Muncie Gear Works, Inc. v. Outboard Marine & Manufacturing Co. et al., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

There is a hopeless conflict in the testimony of the plaintiff's experts and those for the defendant with respect to the meaning of the word "integral" as applied to chair backs. Plaintiff's experts contend that the word "integral" means any chair back which possesses a degree of oneness or integrity and permanence of structure making it capable of performing as a chair back, and they state that any such chair back is "integral" both in the structural and functional senses. On the other hand, it appears to be the position of the defendant's experts that no chair back is "integral" unless it is formed by blow molding the back from

a single, round, heated tube of plastic which has just emerged from an extruding machine, called in the art a "parison", or at least from two sheets of material which are heated and which have just emerged from an extruding machine.

■ It is here to be noted that defendant insists, and the Court agrees, that the '344 patent is addressed primarily to persons having skill in the furniture art as distinguished from persons having skill in the blow molding art. With this in mind, and considering the weight of the testimony, the Court finds that any hollow, resilient chair back regardless of material, put together in such fashion that as a permanent, definable section, portion or part, it exists as a chair back and functions as a chair back, is "integral" within the meaning of the word as used in the furniture art. In making this finding the Court is not unmindful of the fact that theoretically and technically there may be other more restrictive or even more all inclusive definitions of the word "integral"; however, in the practical art of furniture making to which the '344 patent is primarily directed, the Court is convinced that the above definition is a practical and acceptable one to be applied in this case.

■ It was the contention of the defendant that while the disclosure of the '344 patent makes no mention of the word "integral", it is synonymous with the expression "blow molding". The Court cannot agree with this contention.

The Court finds from the evidence as a whole that an integral, hollow, resilient plastic chair back can in fact be made, and could have been made at the time the invention of the '344 patent was conceived by the patentees, by a process other than "blow molding". For instance, it would have been at that time, and still is, entirely practical to make a chair back as just defined by first injection molding two halves or shells, and securing them together either by what is called solvent welding, or by heat and pressure fusing, or by other means.

Giving claim 2, therefore, the broadest interpretation permitted by the disclosure on which is based, namely, the specification and drawings of the '344 patent, and ascribing to its words the meanings which the Court believes from the testimony as a whole would have significance to those skilled in the furniture art, the Court finds that the combination of claim 2 of the patent would read upon any disclosure which shows a chair having a frame and a hollow, resilient plastic chair back mounted upon the frame, provided that such plastic back was so permanently put together as to be and act as a chair back, and this is true regardless of what process or steps are used to fabricate the same.

As to the prior art against the '344 patent, and without analyzing each patent relied upon individually, the Court finds that at least some of them show a chair which includes a frame and an integral, hollow, resilient plastic back, mounted on a frame.

The Court further finds that claim 2 of the '344 patent reads directly upon the accused chairs, but that claim 2 is not infringed because claim 2 is invalid for the reasons heretofore set forth from the factual standpoint.

It was stipulated during the trial that a chair equipped with a seat made exactly as PX 11 is made, does not infringe any of the claims of the '723 patent. The Court finds that the only difference between PX 11 and the seats of the accused chairs is the addition of extra ribbing on the underneath side of the plastic seats, at the rear thereof.

■ The defendant did not contend that either of the claims of the '723 patent were literally infringed by the construction of the accused chair incorporating the rib reinforced seat, but on the other hand contended that the addition of the ribbing to what was admittedly a non-infringing seat (PX 11), made the accused one the mechanical equivalent of

what is claimed in the '723 patent. The evidence in this case is clear that ribbing, or ribs, or reinforcements by thickening, all for increasing the strength of plastic parts, have been used practically since plastics have been fabricated into useful items. The Court takes judicial notice of the fact that such ribs or reinforcements find a direct counterpart in the metal working arts wherein ribs in the form of angles, plates and the like, are welded to thin metal parts to reinforce them.

The improvement of the '723 patent relates to the combination of a specifically defined cross rib structure on the seat, which abuts and cooperates with a specifically defined cross bar on the metal portion of the chair frame, together with fasteners passing through such cross rib and metal bar. By this statement the Court does not intend to exclude any other elements of the combination recited in claims 1 to 5 of the '723 patent, but these are specifically mentioned because it is these elements which the defendant contends find their full mechanical equivalent in the extra ribbing found on the underside of the rear portion of the accused seat-chair combination.

The weight of the evidence leads the Court to conclude and the Court finds that the additional ribbing added to the seats of the accused chair, over the seat construction shown in PX 11 (admitted not to be an infringement) has no function or purpose other than merely to strengthen the seat. Specifically, such additional ribbing plays no part in securing the accused seat to the frame of the chair on which it is mounted. There is in fact no cross bar which abuts any cross rib in the accused construction as defined in the claims, and thus there are no fasteners passing through any two such members since the members themselves are absent.

Taking into account that ribbing for strength is old, that the claims of the '723 patent specifically define the precise way in which the frame chair and seat are combined and attached, and further considering that PX 11, except for the extra ribbing, corresponds precisely to the accused seat, yet is admitted not to be an infringement, the Court finds that the addition of the ribs does not result in a combination which is the mechanical equivalent, and therefore an infringement, of the claimed structure. The plaintiff simply has adopted a different method of attaching its seat to its frame.

The Court finds that the prior art does not anticipate the claims of the '723 patent.

The relevant statutes to be considered in this action are title 35 U.S.C. Sections 101, 102(a), 102(b), and 103.

■ The test of invention is novelty, utility and nonobviousness. Graham v. John Deere Co., 383 U.S. 1, at page 12, 86 S.Ct. 684, 15 L.Ed.2d 545.

■ It is enough to defeat a patent under 35 U.S.C. § 103 that from one or more related prior art patents, or related prior uses, one having ordinary skill in the art would find the claimed invention as a whole obvious at the time it was made. Graham v. John Deere Co., 383 U.S. 1 at 24, 86 S.Ct. 684 (1966); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (C.A. 7, 1966); Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 at 390 (C.A. 7); Senco Products, Inc. v. Fastener Corporation, 269 F.2d 33 at 34 (C.A. 7); Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 at 30 (C.A. 8).

■ United States Letters Patent No. 3,111,344 as to claim 2 thereof here in suit, is invalid and of no effect in law for each of the following reasons:

a. Claim 2 is directed to subject matter that is fully anticipated by the prior art.

b. Claim 2 of said patent 3,111,344 is directed to subject matter that distinguishes over the prior art, if at all, only in degree rather than kind, and in ways that would have been obvious to those skilled in the relevant arts at the time the patentees made the alleged invention, or discovered the said subject matter thereof.

c. It does not amount to patentable invention to substitute plastic material for metal or other materials in the hollow backs for chairs, nor to blow mold hollow plastic backs for chairs in view of the prior art relating to blow molding, nor to make the backs of such chairs integral by blow molding or otherwise, in view of the prior art. Hotchkiss et al. v. Greenwood et al., 11 How. 248, 52 U.S. 248, 13 L.Ed. 683; Spray-Bilt, Inc. v. Ingersoll-Rand World Trade, Ltd. (C.A. 5, 1965), 350 F.2d 99; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 118 F.2d 600, CA 7.

d. Under the facts of the case, the '344 patent is not invalid under the doctrine of Muncie Gear Works, Inc., et al. v. Outboard, Marine & Manufacturing Company, et al., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

Claim 2 of said patent 3,111,344 is not infringed by the accused chairs because said claim is invalid.

■ United States Letters Patent 3,173,723, as to claims 1 to 5 thereof here in suit, is valid, but these claims are not infringed because the accused seat attachment of the plaintiff omits essential elements therefrom which are material elements of the claims and therefore the totality of the elements set forth in the claims is not present in the accused seat attachment.

■ Patent 3,173,723, being in a crowded art, is entitled to a range of equivalents commensurate with the inventive contribution thereof; and so treated the claims thereof cannot be construed to cover the accused seat attachment under the doctrine of equivalents. Southern Saw Service v. Pittsburgh-Erie Saw Corp., C.A.5, 239 F.2d 339.

Plaintiff is entitled to have judgment on its complaint against defendant: declaring claim 2 of said Letters Patent 3,111,344 invalid and unenforcible against the plaintiff, and that none of the accused chairs infringe any claims

of Patent 3,173,723; enjoining the defendant from maintaining or bringing this or any other suit, claims, or cause of action against plaintiff, its licensees, customers, privies, and assigns, under claim 2 of the said '344 patent and under all the claims of the said '723 patent, and from threatening to do so; and awarding to plaintiff its costs.

## FINAL JUDGMENT

Pursuant to the opinion entered in this case on the 30th day of January, 1968, it is ordered, adjudged and decreed as follows:

1. U. S. Letters Patent No. 3,111,344, as to claim 2 thereof here in suit, is invalid, null, and void in law.

2. U. S. Letters Patent No. 3,173,723, as to claims 1 to 5 thereof here in suit, is valid, but the plaintiff, Southeastern Metals Company, Inc., has not infringed the aforesaid claims of said Letters Patent No. 3,173,723 by reason of its manufacture, use and sale of the accused chairs, the construction of which is particularly described in said opinion, nor has plaintiff induced the infringement of said claims of said Letters Patent No. 3,173,723 by reason of its manufacture, use or sale of the said chairs.

3. The defendant, American Seating Company, its officers, agents, servants, employees, successors and assigns, and all others in active concert or participation with it or them, are hereby perpetually enjoined from maintaining or bringing any suit, claim, or cause of action against plaintiff or against plaintiff's licensees, customers or assigns, or from threatening to do so, for infringement of claim 2 of U. S. Letters Patent No. 3,-111,344, or claims 1 to 5, inclusive, of U. S. Letters Patent No. 3,173,723, by reason of the manufacture, use or sale of said accused chairs.

4. The defendant's counterclaims are dismissed with prejudice.

5. The plaintiff is awarded its taxable costs for which execution may issue.