55 CCPA

**Application of Roy W. DIKE.**
**Patent Appeal No. 7941.**

United States Court of Customs and Patent Appeals.
May 16, 1968.

Rehearing Denied July 3, 1968.

---

Mason, Porter, Diller & Brown, Charles J. Diller, Vincent L. Ramik, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,[*] Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claims 1–7 and 10–17 of Dike's application [1] for "Integral Plastic Container and Carrying Handle."

Illustrative of one form of appellant's container and the process of making it are Figs. 3 (reproduced in part) and 4 of the application:

The illustrated container includes a body 31 with an integral shoulder 32, an upstanding neck 33 and a conical end closure 34. A bail or U-shaped handle 35, including a grip portion 36 and a pair of depending legs 37, is joined to the shoulder 32 by a pair of flexible hinge joints 38. The hinge joints each include a first bulbous body portion extending from the shoulder 32 and tapering up-

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] Serial No. 250,058, filed January 8, 1963.

wardly therefrom, a thin flexible hinge portion immediately adjoining the first bulbous body portion, and a second bulbous portion connecting the other end of the thin flexible portion to the leg 37 of the bail.

The specification describes the procedure for making the container as follows:

The container body 31 and the carrying handle 35 of the integral container and carrying handle 30 are simultaneously formed from a tubular piece of plastic material 40 by blow-molding. The tubular piece of plastic material 40 is first inserted into a cavity of a split-mold (not shown) of a blow-molding machine (also not shown). The cavity in each portion of the split-mold is concavely contoured to the semi-cylindrical configuration of the container body 31 and the conical end closure portion 34. A carrying handle portion is formed in each split-mold portion, with a plane through abutting surfaces of the mold portions of the split-mold passing axially through the container body 31, the container end closure portion 34 and the carrying handle 35. Thus, the portions of the split-mold cooperate to form a cavity which is a mirror image of the container and carrying handle 30.

The piece of plastic material 40, originally in its tubular form, is inserted between the portions of the split-mold at which time the split-mold is closed and air under pressure is simultaneously injected into the split-mold in a known manner to cause the plastic tubular portion 40 to conform to the configuration of the split-mold cavity. The split-mold is open [opened ?] and the container and carrying handle 30 of Figure 3 is withdrawn therefrom.

As is clearly shown in Figure 4 of the drawing, the conical end closure portion 34 and the plastic material 40 surrounding and enclosing the carrying handle 35 is removed by a cutting or severing operation. Upon the removal of the conical end closure portion 34 and the portion of the material surrounding the carrying handle 35, an integral container and carrying handle having an open mouth is formed, as is shown in Figure 4.

Claims 1, 3 and 4 are representative:

1. An integral plastic container and carrying handle, said container comprising a body having an upper portion including an annular shoulder terminating in an upstanding neck, a handle of a generally inverted U-shaped configuration, said handle being secured at its respective ends to diametrically spaced portions of the body by a flexible joint, a line of flash material on said body and handle, said flexible joints being coplanar and in plane taken through the axis of the body and the line of flash material.

3. An integral one-piece, blow molded plastic container and carrying handle, said container comprising a body having an upper portion including an annular shoulder terminating in an upstanding neck, an integral bail of a generally inverted U-shaped configuration, said bail being secured at its respective ends to diametrically spaced portions of the annular shoulder by a flexible joint, said flexible joints being thin as compared to the thickness of the bail whereby flexture, of the joints is enhanced, said flexible joints being coplanar and in a plane taken through the axis of the body, said last-mentioned plane being identical to a plane passing through abutting portions of a split-mold from which the container and carrying handle is blowmolded.

4. The integral container and handle as defined in claim 1 wherein each of said flexible joints includes an upper

and a lower bulbous portion for integrally reinforcing and forming each of the flexible points at its integral juncture with a respective handle and the annular shoulder.

The references are: [2]

| Harris (British) | 11,637 | August 13, 1888. |
| Galloni (Italian) | 553,016 | December 17, 1956. |

———◆———

Harris relates to a rubber water bottle adequately illustrated in the upper portions of Figs. 1 and 2 reproduced below:

———◆———

The bottle is of "the usual formation" and provided with "a usual suspension band" or handle B, B', B. It "may be obviously made of various materials and in various ways as for example of cloth coated with India-rubber attached and vulcanised" onto the bottle.

**2.** U.S. patent No. 3,010,552, issued November 28, 1961, and U.S. patent No. 2,982,434, issued May 2, 1961, were relied on in the rejection of two dependent claims, 6 and 7. However, consideration of those patents is unnecessary because appellant admitted before the board that claims 6 and 7 stand or fall with claims 4 and 5 on which they depend.

Galloni discloses a collapsible fruit basket, shown in its Fig. 2:

FIG. 2

The basket is formed from a pre-shaped, flat blank of plastic material folded as shown to provide a bottom (not shown), four sides 11, 12, 13 and 14 and two handles 23. The feature of interest here is the provision of two thickened portions 19 on opposite sides of a strip of reduced thickness at the four corners where the sides are folded at right angles to each other.

The board affirmed the examiner's rejection of all the claims as unpatentable over Harris in view of Galloni under § 103. It also affirmed the rejection of claims 1, 2, 11–15 and 17 as "containing new matter as to the recital of the flash material being on the body."

The rejection on "new matter" pertains to recitations of which the term "a line of flash material on said body and handle" in claim 1 is illustrative. The examiner conceded that the middle line shown along the vertical edge of the portion 40 outlying the *handle* in Figs. 3 and 4 constitutes a line of flash material produced by blow-molding.

However, he pointed out that the line is not shown in the drawing as continuing onto the *body* and that the specification nowhere refers to a "line of flash." Both the examiner and the board were unconvinced that blow-molding the container in a split-mold would inherently provide a line of flash on the *body* of the container.

Appellant urges that it is a "clear *fact*" that "*every* container which is blow-molded in a split-mold must necessarily include and, in fact, does include a line of flash or a flash line on the body thereof." He states that the body of the present container would include a line of flash forming a continuation of the flash line illustrated on the handle portion in Fig. 3 because the specification and original claim 3[3] disclose that the container is formed in a split-mold having common abutting surfaces in the plane passing through the handle and hinge means. Appellant also states that the reason the flash line on the handle portion in Fig. 3 was not shown

3. Present claim 3 reproduced herein differs from original claim 3 only in the inclusion of the word "plastic" at the beginning thereof.

extending down the body of the container is "that it [the line of flash] is normally minute to the degree that it is visible only upon close inspection, although it does exist *in all instances.*"

 We are satisfied from the facts here that a line of flash, although it may be "minute" and "visible only upon close inspection," will necessarily and inherently be produced on the body portion of appellant's container as well as on the handle portion. The rejection of claims 1, 2, 11–15 and 17 as containing "new matter" therefore is reversed.

In affirming the prior art rejection, the board stated:

The limitations in some of the claims and most of the arguments presented have overtones of a method or process subject matter whereas the claims before us are all directed to an article of manufacture. Considering claim 1, for example, this claim is directed to a container having a carrying handle and includes in the combination a line of flash material on the container body and handle. The significance in a patentable sense of the flash is not apparent because a flash is, in normal parlance, a small or thin extruded piece of material that imparts no significance to the article itself and is conventionally removed by a simple trimming or cutting operation. It is recognized that claims may be allowed for a blank or for an intermediate product, such as that shown in Figure 3 of this application for example. However, where as here the flash is not described as to the specifics of its shape, shown attached in Figure 3 and removed in Figure 4, it is our opinion that the broad recital of a flash in the claims adds nothing unobvious over the Harris patent.

The identification of the article as "blow-molded" in some of the claims, claim 3 for example, and the reference to a "split-mold", in claims 10, 16 and 17, add nothing of patentable im-

port over the art relied on because, at best, they relate to the process of making the article and are not definitive of the structure of the article, to which the claims are directed.

The upper and lower bulbous portions set forth in claims 4, 5, 6 and 7 are obvious in view of Galloni. As to the remaining claims which do not recite the bulbous portions, the patent to Galloni is not necessary as a secondary teaching to modify the Harris structure. Some of the said remaining claims, claim 2 for example, describe the flexible joint as "being thin as compared to the thickness of the bail". The handle in Harris is flexible and necessarily has a flexible joint. Reducing the thickness at a part of a member to provide greater flexibility thereat is such an old and well known expedient as to be considered obvious by judicial notice.

 We find no reversible error in the board's conclusion that claims 1–3 and 10–17 are unpatentable over the prior art. Those claims are directed to the article rather than to the process disclosed, and the article is defined in the claims by its structure without recourse to the method of making it. We find nothing in the decisions cited on this point by appellant [4] to support patentability of the claims. Rather, this is a case where the product itself is not patentably distinguished over the prior art, and process limitations cannot impart patentability to it. In re Stephens, 345 F.2d 1020, 52 CCPA 1409; In re Dilnot, 300 F.2d 945, 49 CCPA 1015.

Appellant contends that the recitations pertaining to the "line of flash" distinguish structurally over the references. However, appellant concedes that the line of flash is "normally minute to the degree that it is visible only upon close inspection" and does not controvert the finding of the board that flash is "conventionally removed" from the articles. Thus, the recitation of the line of flash

---

4. In re Bridgeford, 357 F.2d 679, 53 CCPA 1182; Ex parte Painter, 1891 C.D. 200, 57 O.G. 999, and Ex parte Fesenmeier, 1922 C.D. 18, 302 O.G. 199.

is only significant insofar as it is employed as a reference point for defining the location of the handle parts as in claim 1 set forth above. We are satisfied that the defined location of those parts is obvious from Harris.

Moreover, the "minute" line of flash is basically no more than a slight protrusion along the edge of the article. As such, it does not distinguish unobviously over the rounded edge on the body of the Harris' water bottle. The edge of the handle of that bottle also appears rounded in the drawings.

Appellant makes a point of his container being of *"integral, one-piece"* construction. However, that term plainly includes parts of like material fused into a unitary construction, which description is applicable to the water bottle of "the usual formation" referred to by Harris, with its vulcanized connections for its rubber components.[5]

■ Claim 4, along with 5, 6 and 7 which are each serially dependent on the preceding claim, all raise the issue whether the enlarged portions 19 adjoining the corners of the Galloni basket would make it obvious to provide a water bottle disclosed by Harris with flexible joints made up of spaced bulbous portions at each end of the handle. It is our conclusion that Galloni does not show the construction to be obvious.

As appellant points out, Galloni contemplates stacking filled baskets and provides the enlarged reinforcing portions 19 for the purpose of "stiffening the basket at the corners so as to impart to them considerable resistance to the vertical stress caused by the stacking." The function of the bulbous portions of appellant's hinge, on the other hand, is to "allow stresses to be more evenly distributed across the thin flexible hinge" when the container is being carried by

its handle. It is not apparent that the use of relatively wide reinforcing strips in Galloni to provide reinforcement transversely of the joints therein would suggest to one skilled in the art that he provide spaced bulbous members at the jointures of the water bag and handle of Harris to attain uniform distribution stresses in a flexible joint in the relatively narrow handle. Indeed, Galloni himself includes handles 23 which are foldably secured to opposite sides of the basket but makes no suggestion such handles be provided with bulbous portions.

The decision is affirmed as to claims 1–3 and 10–17 and reversed as to claims 4–7.

Modified.

RICH, Judge (concurring).

While I agree with the affirmance of the rejection of claims 1–3 and 10–17 on the Harris and Galloni references, I cannot agree with the apparent treatment by the board and the majority of the "line of flash" recitations in certain claims as some kind of process limitation in claims to structure.

Taking claim 1, quoted in the majority opinion, as an example, it seems clear to me that the only significance of the references to the "line of flash" is as a reference point defining the plane in which the handle joints lie. This is a purely structural limitation, notwithstanding a flash line is produced by the method of molding in a split mold.

Since the limitations having reference to line of flash are structural limitations, all discussion of process limitations in this connection and of the insignificance or immateriality of flash per se seems to me to be beside the point. The rejection is proper because the subject matter claimed, including the location

---

5. That the term "integral" may be construed as relatively broad and does not imply any characteristic lacking in Harris is shown for example, by Henderson

v. Grable, 339 F.2d 465, 52 CCPA 920, and In re Larson, 340 F.2d 965, 52 CCPA 930.

limitations of the handle parts defined by reference to the line of flash (or the mark left by the parting line of the mold), is obvious in view of the combined teachings of the references.