**AMERICAN SEATING COMPANY,**
Appellant,

v.

**SOUTHEASTERN METALS COMPANY,**
Inc., Appellee.

No. 26007.

United States Court of Appeals
Fifth Circuit.

June 11, 1969.

Douglas Arant, Macbeth Wagnon, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., Jerome F. Fallon, Chicago, Ill., Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., for defendant-appellant.

Hugh P. Carter, Jennings, Carter & Thompson, Birmingham, Ala., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

GODBOLD, Circuit Judge:

This is a patent infringement suit involving two school chair patents obtained by appellant, American Seating Company.[1] The district judge found that American Seating's chair back patent (3,111,344) is invalid and that its chair seat patent (3,173,723) is valid but not infringed by appellee, Southeastern Metals. American Seating appeals from both of these determinations.

### The '344 Patent

The district court held the chair back patent is invalid because it was anticipated by the prior art under 35 U.S.C.A. § 102 and failed to meet the requirement of non-obviousness under 35 U.S.C.A. § 103.

The precise matter under consideration is Claim 2[2] of the '344 patent which reads as follows:

> In a chair: a supporting frame; and an integral, hollow, resilient plastic chair back mounted on the frame.

American Seating's vice president for research and development virtually conceded,[3] and the evidence clearly indicates, that all of the elements mentioned in the above claim were present in the prior art with the possible exception of integral. Thus at the threshold we are met with the issue of what integral means. The trial judge concluded that an integral chair back is "any hollow, resilient chair back regardless of materi-

---

1. Appellee, Southeastern Metals, plaintiff below, instituted this action by seeking a declaratory judgement of nonvalidity and noninfringement of the American Seating chair back patent. American Seating then cross-claimed for infringement of the chair back patent and also for infringement of a chair seat patent. The district court opinion is published at 298 F.Supp. 1128 [S.D.Ala., Jan. 31, 1968].

2. By stipulation, only Claim 2 was claimed to be infringed.

3. "Q. [by attorney for Southeastern Metals] Mr. Henrikson and this is the last question I am going to ask you, sir, I suppose the defendants in this case admit that the following combination is old in the prior art and you check me if I am wrong. In a chair, a supporting frame, a hollow, resilient, plastic chair back mounted on a frame?
"A. I would say that most of those elements have been present. You didn't have the word integral in there, did you?
"Q. No, sir. I did not. Answer my question, if you will.
"A. Yes."

al, put together in such fashion that as a permanent, definable section, portion or part, it exists as a chair back and functions as a chair back."

Appellant insists that the court's definition is too broad and too simple, that it necessarily leads to a conclusion of invalidity, that it is inconceivable for this to have been the basis for the grant of the '344 patent.[4] It says that integral is an uncommon word the meaning of which the court should have sought in the specifications instead of in the dictionary or in ordinary experience. Appellant asserts that in the furniture art an integral chair back can only mean one that is formed by a process known as blow-molding out of one piece of material whereby it comes into being all at once with only one definable constituent part.

■■■■ For several reasons we conclude that the trial judge's definition of integral is not erroneous and that the appellant's contention that integral has the narrow meaning just above described must be rejected. The trial judge's definition of integral in the furniture art was based on his evaluation of the conflicting scientific testimony in this case. When there is a marked conflict among expert witnesses, the case is clearly one which calls for the application of Rule 52(a) of the Fed.R.Civ.P.[5] University of Illinois Foundation v. Block Drug Co., 241 F.2d 6, 10 (7th Cir.1957). *See also* Graver Tank & Mfg. Co. v. Linde Air Prod. Co., 336 U. S. 271, 274, 69 S.Ct. 535, 93 L.Ed. 672, 676 (1949).

The construction of integral urged by appellant is limited by appellant's theory that blow-molding is restricted in its meaning to a process employing only one piece of plastic material so that the molded item comes into being at once with only a single definable constituent part. Blow-molding has been known for years. In the process plastic material is positioned between two halves of a mold, and the mold halves are brought together. Compressed air is injected into the mold to force the material to conform to the mold interior. Appellant claims that blow-molding can only mean a process in which a single cylindrical tube of plastic material is positioned in the mold. But there was testimony which the trial court was entitled to accept, and did accept, that the process also includes the use of two sheets of plastic positioned in the mold.

The word "integral" does not appear in the specifications. It was not included in the original application filed February 5, 1962, and did not appear until an amendment was submitted April 5, 1963, after two almost wholesale rejections of the application. Appellant asks the court to find patentability by reading the reference in the specifications to the blow-molding process (or the structure resulting from that process) as a proper, and narrowing, interpretation of integral, relying on the principles that the claim is to be read in the light of the specifications and that the specifications can narrow but not broaden the claims, United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). In another effort to link blow-molded with integral, appellant says that the specifications refer to the back as having "integrity," that a blow-molded joint

---

4. Appellant concedes that if integral means uniting several parts of an existing device into an integrated construction it describes merely routine mechanical skill and not invention. *E. g.*, Howard v. Detroit Stove Works, 150 U.S. 164, 170, 14 S.Ct. 68, 37 L.Ed. 1039, 1041 (1893); Walker, Patents § 34 (Diller's ed. 1937). Appellant refers to the existence of more than sixty decisions between 1937 and 1963 holding that integral in this sense is not inventive.

5. Rule 52(a) applies as much to patent cases as any others in the federal courts. Appellant correctly urges that the ultimate question of patent validity is one of law. Nevertheless, that conclusion of law must be based on the results of several basic factual inquiries. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1960). *See* Sisko v. Southern Resin & Fiberglass Corp., 373 F.2d 866 (5th Cir. 1967).

possesses "integrity" (which, if nothing else, sounds like integral) because there is no fused joint as there is in items molded of two pieces, that integral means possessing integrity, ergo integral means blow-molded. It is quite plain that these elaborate circumlocutions are contrary to the intent of the patentees and the examiner. The term "blow-molded" was omitted from the claim because the examiner and appellant's attorney concluded that the method concept of "blow-molded," a process limitation, could not impart patentability to the claim.

There was testimony, and the court found, that an integral chair back can be constructed by processes other than blow-molding.[6] And, as we have pointed out above, competent testimony indicated that the blow-molding process may act upon more than one sheet of plastic at a time.

Thus, the court was not plainly erroneous in rejecting appellant's contention that an integral chair back can only be one that is blow-molded from one piece of material as is the '344 chair back.

A claim strikingly similar to American Seating's was recently rejected by the Court of Customs and Patent Appeals in Application of Dike, 394 F.2d 584 (C.C.P.A.1968), where the court affirmed the rejection of a patent for an integral plastic container and carrying handle. The appellant in *Dike* advanced almost precisely the arguments made by American Seating. With respect to them, the Court of Customs and Patent Appeals stated:

> Appellant makes a point of his container being of *"integral, one-piece"* construction. However, that term plainly includes parts of like material fused into a unitary construction * *. (emphasis in original)

394 F.2d at 590.

As appellee acknowledges, once the district court's definition of integral is accepted the '344 patent is necessarily invalid. As to novelty under § 102, from its study of the prior art the court found that prior to the '344 patent it was old in the seating art to mount plastic backs upon chair frames and to mount hollow backs, both of metal and plastic, on tubular frames. It found that polyethylene, a resilient plastic material, was previously known to the art in general, and by American Seating in particular, to be suitable material for forming seats and backs of chairs. Then, applying the definition it had reached for integral, it concluded that prior art showed a chair which included a frame and an *integral*, hollow resilient plastic back, mounted on a frame. The substance of appellant's argument is that there is no anticipation because none of the prior art had blow-molded backs. But once the correctness of the district court's definition of integral is accepted, appellant's argument falls.

In addition to the finding of lack of § 102 novelty the court found the § 103 requirements of nonobviousness had not been met, as the appellant predicted necessarily would ensue from the district court's definition of integral. The court found that if the allegedly unique integral construction of the chair back distinguished over the prior art at all it did so only in degree rather than kind and in ways that would have been obvious to those skilled in the relevant art at the time the invention was made.

█ Though the court had rejected the argument that integral means blow-molded, it nevertheless made an alternative finding on obviousness—in effect considering integral to mean what appellant says it must mean—holding that a

---

**6.** The patent of appellant's vice president for research and development, covering appellant's older type chair with a solid plastic back, made by injection molding, described the back as "integrally molded." The vice president explained that the injection molded solid back was integral because "It is one piece, complete, made at one time. It comes into [sic] plastic state into the solid state in one operation. It is all one chunk." He characterized the essential difference between his patent and the '344 back as being that his back was solid and the '344 back was hollow.

blow-molded chair back is not a patentable invention:

> It does not amount to patentable invention to substitute plastic material for metal or other materials in the hollow backs for chairs, nor to blow mold hollow plastic backs for chairs in view of the prior art relating to blow molding, nor to make the backs of such chairs integral by blow molding or otherwise, in view of the prior art.

In Application of Dike, *supra*, the court held, as to identifying an article as blow-molded:

> The identification of the article as "blow-molded" in some of the claims, * * * add nothing of patentable import over the art relied on because, at best, they relate to the process of making the article and are not definitive of the structure of the article * * *.

394 F.2d at 589.

We agree with the district court's findings. We think the evidence indicates that there is no great skill or invention involved in the application of the blow-molding process to chair back construction.

Appellant urges that in considering § 103 the district court failed to make the analysis required by the Supreme Court in Graham v. John Deere Co., *supra.* We do not consider this at length in view of the appellant's concessions referred to above, and the fact that obviousness is an alternative basis for decision. On a fair reading of the entire opinion and findings we are clear the district court did go through the *John Deere* analysis, although the findings are not as specific and particularized as is desirable.

■ Finally, appellant relies heavily on the presumption of patent validity provided by 35 U.S.C.A. § 282[7] in urging us to reverse the decision of the trial court. However, the evidence shows that the Patent Office did not have all the relevant prior art before it when the '344 patent was issued.[8] In these circumstances, the presumption of validity otherwise attaching from the issuance of the patent is weakened, if not totally destroyed. Cornell v. Adams Engineering Co., 258 F.2d 874 (5th Cir. 1958). *See also* Zero Manufacturing Co. v. Mississippi Milk Pro. Ass'n, 358 F.2d 853 (5th Cir.1966); Murray Co. of Texas v. Continental Gin Co., 264 F.2d 65 (5th Cir.1959.)

### The '723 Patent

■ The trial court found the chair seat patent valid but not infringed. The patent teaches a seat attachment involving a cross rib which is underneath and part of the seat panel, and a cross bar which is part of the chair top frame assembly. The frame assembly is positioned so that the cross bar abuts the cross rib. The cross rib and the cross bar are provided with aligned rivet openings. Rivets are extended through the openings to join the seat panel and the top frame assembly. A specific purpose of the invention is to tie the seat firmly to the frame, preventing lateral movement and vertical movement upward, by the connection between the seat cross rib and the metal cross bar.

The accused device does not embody the metal cross bar. It does have frame

---

7. That statute reads in relevant part:
   "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

8. For example, the following: The Collins patent ('602) taught the use of molded, resilient plastic for chair seats and backs. The Mason patent ('624) taught the advantages of making the seat or back hollow. The Baermann patent ('708) claimed for invention "a seating article having a combined seat, side, and back structure comprising a pair of molded shells contacting one another substantially throughout * * * and having hollow spaces between said shells in the side and back portions of said article." The Houser patent ('497) was for an improved church pew construction and taught seat and back rest portions formed from an integral sheet of relatively thin plastic material with the back rest portion defining a closed cavity (hollow).

ribbing, but the ribbing runs from the back to the front of the chair and thus could not properly be described as a cross rib. There are no fastening devices passing through this ribbing to connect the seat with any part of the frame. The connection of the accused seat to the frame is accomplished by the use of curved tabs running front to back on the seat. The tabs are secured directly to the frame itself.

On the basis of demonstration and testimony regarding the above facts, the trial court found that the accused seat did not infringe on American Seating's seat and attachment patent. The trial judge's findings are not clearly erroneous and are amply supported by the evidence. The physical evidence shows that the accused seat is not attached to the frame in the same manner as the American Seating seat. Moreover, there was competent testimony that the ribbing on the Southeastern Metals seat played no part whatsoever in the fastening process but was added to the chair merely to strengthen the plastic seat.

█ American Seating does not contend that the accused device is an exact duplicate of the patent but relies on the doctrine of equivalents to establish infringement. Plastic seats have been attached to metal frames many times in many ways, and an inventor is entitled only to a range of equivalents commensurate with the scope of his invention. Southern Saw Service v. Pittsburgh-Erie Saw Corp., 239 F.2d 339, 345 (5th Cir.1957). Southeastern Metal's attachment device is not an infringement within the narrow scope to be afforded an invention in this crowded field.

It is well settled that infringement exists only where the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished.

Stewart-Warner Corp. v. Lone Star Gas Co., 195 F.2d 645, 648 (5th Cir.1952). We agree with the trial court that the accused device is not substantially iden-

tical with the teachings of the patent in any respect.

Our disposition of this case makes it unnecessary for us to consider appellee's argument regarding possible late claiming by the patentee.

The judgment of nonvalidity of the '344 patent and noninfringement of the '723 patent is affirmed.