**COURTESY COMMUNICATIONS CORPORATION, a corporation, and Milton J. Carrier**

v.

**C–FIVE, INC., a corporation, and Neotec, Inc., a corporation.**

Civ. A. No. CA 4–76–287.

United States District Court,
N. D. Texas,
Fort Worth Division.

Sept. 1, 1978.

**1184**

Thomas L. Cantrell, Dallas, Tex., for plaintiffs.

Ely Silverman, Elsie Brown Silverman, Amarillo, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

This is an action for patent infringement under 35 U.S.C. § 271 *et seq.* by Courtesy Communications Corporation (Courtesy) and Milton J. Carrier against C-Five, Inc. and Neotec, Inc. Defendants have counterclaimed for unfair trade practices. This Court has jurisdiction of the subject matter of this suit and venue is proper.

Plaintiff Courtesy is a Texas corporation with its principal place of business in Dallas, Texas. Plaintiff Carrier is a resident of Dallas County, Texas. Both defendants are Texas corporations with regular places of business in Arlington, Texas.

The patent involved in this action, United States No. 3,794,774, concerns equipment which will play music over the phone lines when the caller is placed on hold. Plaintiff Courtesy Communications is the owner of that patent by virtue of an assignment from the inventors, Kemmerly, Kaner and Merritt. One of the inventors, Mr. Richard C. Kemmerly, is president of Courtesy Communications. Plaintiff Carrier is the exclusive licensee under the patent in question with rights to manufacture, sell and sublicense. Mr. Carrier has marketed the Courtesy patent under the name Access Communications, Inc.

Defendant Neotec manufactures equipment that plaintiffs say infringes on their patent. Defendant C-Five markets Neotec's devices. While defendants have numerous models, the present action is limited to the issue of whether the Neotec 302B infringes plaintiff's patent. Damages, if any, will be determined at a future proceeding.

■ There is no doubt that the two systems are similar in many respects. Before reaching the infringement issue, however, this Court must first determine the validity of plaintiffs' patent. *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). Both issues require some understanding of the complex electronics utilized by both plaintiffs and defendants as well as by the prior art.

## I. FACTS

The invention at issue is a system that permits conventional telephones to apply an audio program to an incoming telephone line which has been placed on hold. It does this by sensing and reacting to changes in voltages between certain leads in the telephone line.

A standard phone can be in only one of four possible conditions at any one time: idle, ringing, in use or on hold. In any of these conditions, certain predictable voltages will be present on the line between certain leads. For example, on the line between the lamp and lamp ground leads (hereinafter L-LG line), there is a constant zero volts when the phone is idle. As the phone is ringing, the voltage across the L-LG line will go from zero to 10 volts and back. The voltage changes from 10 volts to zero volts simultaneous with the on-off flashing of the light. The voltage will be zero for one half second and then jump to 10 volts for one half second. This is expressed by saying there is a 50% duty cycle of 10 volts.

When the phone is answered and in use, the voltage along the L-LG line is a constant 10 volts. When the caller is put on hold, the light flashes rapidly. It is on for $9/10$ of a second and off for $1/10$ of a second. The voltage on the L-LG line changes the same way. It will be 10 volts for $9/10$ of a second and zero volts for $1/10$ of a second. This is a 90% duty cycle of 10 volts. The voltage will return to a steady 10 voltage when the phone is re-engaged and will go back to zero when the phone is hung up.

Similarly, the voltage between the A and the $A_1$ leads (hereinafter A-$A_1$ line) changes according to the condition of the phone. During the idle, ringing and on hold stages, there is a constant –24 volts on the A-$A_1$ line. When the phone is in use, that voltage along the A-$A_1$ line will always be zero.

The invention of the patent in this suit employs two voltage detectors. One, the "line-in-use-or-on-hold-detector" is on the L-LG line. That detector is triggered only when the voltage on the L-LG line is greater than that generated by a 50% duty cycle for 10 volts. Only when the line is in use or on hold is the L-LG voltage that great.

The other detector used is the "line switch position detector". It monitors the voltage along the A-$A_1$ line and is activated only when the line is open, i. e., when it is idle, ringing or on hold and thus carrying –24 volts.

Plaintiff's patent utilizes an "and" logic system, which means that a "yes" signal is required from both detectors to turn the logic system on. The detector on the L-LG line only says "yes" when the phone is in use or on hold. The A-$A_1$ detector sends a "yes" signal only when the phone is idle, ringing or on hold. This means that only when the phone is in the hold condition will both detectors send "yes" signals and operate the logic. That logic, when operated, energizes a relay which switches an audio program onto the telephone line.

Defendants' apparatus operates in much the same way. The major difference, however, is that one of their voltage detectors is located on the line between the tip and ring leads (hereinafter T-R line), rather than on

the L-LG line. On the T-R line there is a constant +48 volts while the phone is idle. During the ringing mode the T-R line voltage jumps from +48 volts to –48 volts twenty times per second. When the phone is in use or on hold there is a constant voltage of approximately –4 on the T-R line. Defendants' detector is activated only by the –4 volts present when the phone is in use or on hold.

Before reaching the issue of whether defendants are guilty of infringing plaintiffs' patent, however, it is first necessary to answer defendants' argument that the patent is invalid and should not have been issued.

## II. VALIDITY

In order for an invention to be patentable it must meet three statutory requirements: utility, 35 U.S.C. § 101; novelty, 35 U.S.C. § 102; and nonobviousness, 35 U.S.C. § 103. Failure to satisfy any one of the three will completely bar plaintiff. *Bird Provision Co. v. Owens Country Sausage, Inc.,* 568 F.2d 369 (5th Cir. 1978). Only the nonobviousness issue warrants serious consideration in the present case.

### Nonobviousness

35 U.S.C. § 103 provides that a valid patent may not be issued

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

In arbitrating a nonobviousness controversy a court must investigate three major issues: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

To determine what art qualifies as prior art the date plaintiffs' invention was reduced to practice must be ascertained. Evi-

dence at trial clearly showed that PX # 16, a prototype of the patent in question, was successfully operated in February 1972. Two of the patents relied on by defendants as prior art, Beacham patent No. 3,728,489 and Morse patent No. 3,752,936, were filed after that date and may not, therefore, be considered as prior art.

Having carefully considered the multitude of exhibits introduced as prior art, this Court has determined that only three prior patents have sufficient relevancy to the nonobviousness issue to warrant serious consideration. These three are Levy patent No. 3,246,082, Morse patent No. 3,239,610 and Schouest patent No. 3,568,176. Levy is an invention for playing an audio program over a telephone line while the system is in a hold condition. Morse is an improved telephone line circuit. By itself it has nothing to do with an audio program. Schouest is a system whereby the receiver is alerted that a call has been on hold for a certain length of time. Defendants' primary argument is that a combination of the Levy and Morse patents would make plaintiffs' invention obvious to one of ordinary skill in the art and, therefore, invalid.

In order to automatically provide for the playing of an audio program over a telephone line in the hold condition, the system must be designed in such a way that it can detect when the line has been placed on hold. Before plaintiffs' invention, there were two primary methods by which a system could be designed to react to the hold condition. The first would be by a photocell sensor that could be designed to react when the telephone light flashes its familiar rapid on-off sequence indicative of the hold condition. This is the method utilized by Schouest patent No. 3,568,176. Alternatively a system could be connected to the actual hold button such that the physical act of depressing the button would activate an audio program over the line. This is the spirit and scope of Levy patent No. 3,246,082.

Mr. Kemmerly, the inventor of plaintiffs' patent, had a better idea. His thought was that since the lines going into the telephone set had predictable voltages depending on the condition of the phone (idle, ringing, in use or on hold), he could detect that hold condition by sensing the voltages in the telephone cord. None of the prior art made this method obvious. Kemmerly's invention had the additional advantages of being fully transistorized and external to the telephone set, thus avoiding the need for telephone company permission.

### Claims

Only claims (1), (3), (8), (12), (13) and (14) of plaintiff's patent are involved in the present infringement action. Only their validity, therefore, is presently in question. Because of the importance of the wording and construction of these claims, they are set out here in full.

(1) An audio program system for use with a telephone having a holding switch for disconnecting a telephone receiver from an incoming line and for connecting the incoming line to a holding circuit comprising:

means connected to the telephone line exterior of said telephone for sensing electrical conditions indicative of the connection of the incoming line to a holding circuit, and

means responsive to said sensing means for connecting a source of an audio program to said income line.

(3) The audio program system of claim (1) wherein said source of an audio program comprises a radio receiver.

(8) In a system for applying an audio program to incoming telephone lines connected to a telephone set having line switches each operable between two positions to open and close the lines and each having a plurality of illumination modes representative of different operational states, the combination comprising:

means for generating a first signal upon the detection of an electrical condition of a line switch representative of said line in use or of a line placed in a hold condition,

means for generating a second signal upon the detection of the position of a

line switch when a corresponding line is open,

means responsive to said first and second signals for generating a control signal, and

means operable by said control signal for applying an audio program to the line placed in the hold condition.

(12) In a system for applying an audio program on an incoming telephone line connected to a telephone set having at least one visually illuminated line switch for indicating various operational conditions, the combination comprising:

means for detecting an electrical condition of said switch indicative that said incoming telephone line is in a hold condition and for detecting the continuously illuminated condition of said switch indicative that said incoming telephone line is closed and is being used,

means for detecting the up position of said switch indicative that said incoming telephone line is open, and

means operable upon concurrent detection by both said means for applying an audio program to said incoming telephone line.

(13) The combination of Claim (12) wherein said means for detecting comprise:

semiconductor switches connected to receive voltages from the exterior cord to said telephone set.

(14) The combination of Claim (13) and further comprising:

relay means connected to said incoming telephone line and operable only when each of said semiconductor switches are energized, and

a source of an audio program connected to said relay means.

Claim (1) describes any system exterior to the telephone that electronically senses that the phone is in the hold condition and then plays an audio program over the line. Claim (3) is simply Claim (1) with a radio acting as the audio program. Defendants contend that the aggregation of the Morse and the Levy patents make plaintiffs' Claims (1) and (3) invalid for obviousness.

Initially it must be remembered that there is a presumption of validity as to all claims approved by the Patent Office. 35 U.S.C. § 282. The cases in this circuit do little to pinpoint exactly what amount of proof is needed to rebut that presumption. The only thing certain is that it is something greater than a mere preponderance of the evidence. *Harrington Manufacturing Co., Inc. v. White*, 475 F.2d 788 (5th Cir. 1973). That presumption of validity is strengthened when the relevant prior art was considered by the Patent Office and weakened when it was not. 60 Am.Jur.2d *Patents* § 451 (1972).

While only Levy was considered by the Patent Office, this Court feels that Levy is the most pertinent prior art. Even if one with ordinary skill in the art could combine the Morse and the Levy patents, that combination would not make plaintiffs' Claims (1) and (3) obvious. Kemmerly's patent differs from the hypothetical Levy-Morse combination both in its method of detecting the hold condition and in its connection exterior to the actual telephone set.

In sum, neither Morse nor Schouest add anything to Levy that would make plaintiffs' Claims (1) and (3) invalid for obviousness. Defendants have not succeeded in rebutting plaintiffs' presumption of validity.

Claim (8) is much closer to the illustration of plaintiff's preferred embodiment. It describes the two electrical condition detectors which together trigger the logic that instructs the relay to play the audio program. It makes no reference to any requirement that anything be exterior to the telephone.

Claim (12) is very similar to Claim (8). It again describes the invention as having two detectors: one to indicate that the phone line is in use or on hold and the other to indicate that a second line is open. Lastly it teaches that the audio program is played when both detectors indicate a certain condition.

Claim (13) takes Claim (12) but specifies that the detectors are semiconductor

switches which measure voltages from the exterior telephone cord.

Claim (14) takes Claim (13) and specifies a relay connected to the phone line which is activated only when both of the semiconductor switches are energized. Additionally it teaches that an audio program be connected to that relay.

 This Court believes that all of the above claims are valid as written. The spirit and scope of plaintiffs' patent is that the hold mode is detected by measuring predictable voltages on lines that lead into the telephone. Defendant has not succeeded in convincing this Court that any of the relevant prior art or combinations of prior art functioned in this manner. None of plaintiffs' claims at issue in this lawsuit are void for obviousness.

## III. INFRINGEMENT

It is clear that defendants Neotec 302B (the only model at issue here) is similar in many respects to plaintiffs' patent. It also differs in certain particulars. Determining whether defendant is guilty of infringement requires close examination of those differences and similarities, always keeping in mind not only the literal wording but also the spirit and scope of plaintiffs' claims.

### Major Similarities

1. The primary function of both plaintiffs' invention and defendants' Neotec 302B is to play music over a telephone line in the hold condition.

2. Both plaintiffs' preferred embodiment and defendants' model are connected to the phone through a jack on the exterior cord and not directly into telephone company equipment.

3. Both detect the hold condition and react to that condition.

4. Both monitor the voltages on two separate lines and generate a control signal that applies the music to the held line when certain voltages are present on those lines.

5. Both monitor the voltage an the A-A$_1$ line.

6. Both also monitor a second line to the voltage present when the phone is in use or on hold.

7. Both use semiconductor switches to detect voltages on the two incoming lines.

8. Both use "and" logic to get from the detected voltages to the audio program.

### Major Differences

1. Defendants' apparatus detects the voltage of the tip and ring line (T-R line) rather than the L-LG line.

2. Plaintiffs use oscillatory unijunction transistor solid state switches in monitoring voltages while defendants use inverter solid state switches.

3. Defendants' voltage detector located on the T-R line would not function properly if used on the L-LG line.

4. Defendants' model Neotec 302B has an external power source rather than drawing its power from the telephone lamp leads as does plaintiffs' preferred embodiment.

5. Plaintiffs' logic system, which generates a signal when both voltage detectors are activated, differs from defendants' logic system. Plaintiffs use an "and" gate that generates a derivative signal only when it receives two "yes" signals from the voltage detectors on the A-A$_1$ and the L-LG lines. Defendants use a "nor" gate that generates a derivative signal when it receives two "no" signals from the voltage detectors on the A-A$_1$ and the T-R lines.

6. The logic assemblies are not interchangeable without modification.

### Discussion

To be guilty of infringing another's patent, a device must be substantially identical to the other in structure, mode of operation, and results accomplished. *American Seating Co. v. Southeastern Metals Co.,* 412 F.2d 756 (5th Cir. 1969). A court must decide whether the accused device literally infringes the patent in question and whether it is substantially equivalent to the plaintiff's patent. *Ziegler v. Phillips Petroleum*

*Co.,* 483 F.2d 858 (5th Cir. 1973), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973).

Defendants' defense, shorn of all its electrical engineeringese, is that plaintiffs should be limited to their principal embodiment and, since defendants' Neotec 302B differs in certain respects from that embodiment, there is no infringement. There is no justification for any such restrictive interpretation in this case. Plaintiffs' means claims "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112. It is the opinion of this Court that defendants' Neotec 302B infringes literally on plaintiffs' claims and, additionally, is an equivalent structure.

Many of the differences between the two devices that were emphasized by defendants relate to features of plaintiffs' preferred embodiment which are dealt with in claims not involved in this suit. For example, plaintiffs' use of power from the phone line rather than from an external source is mentioned only in Claim (7). Defendants' use of an exterior power source is no defense to the charge that they infringe Claims (1), (3), (8), (12), (13) and (14). Additionally, the use of unijunction transistors is taught only in plaintiffs' Claims (10), (11) and (16).

Like the plaintiffs' invention, the Neotec 302B uses a "line-in-use-or-on-hold" voltage detector. It is equivalent to the patent in question (1) in the result obtained—signalling of the logic section when the line is in use or on hold, (2) in its mode of operation—by monitoring a voltage having a set, predictable and substantially uniform value when the line is in use or on hold, and generating a signal when this voltage is detected, and (3) in the means utilized to perform this function—a solid state switch. It differs from the preferred embodiment in the particular solid state switch employed and in the fact that it monitors the T-R line rather than the L-LG line. The Neotec 302B like plaintiffs' embodiment, also includes a "line switch position detector to monitor the A-A$_1$ line. It is like the plain-

tiffs' in (1) the result obtained—signalling the logic section when the line is open, i. e., when idle, ringing or on hold, (2) in its mode of operation—by monitoring the A-A$_1$ voltage and generating a signal when the voltage is –24 volts and (3) in the means utilized to perform this function—a solid state switch. It differs from the preferred embodiment in the particular solid state switch employed.

Defendants' model also uses a logic system just as plaintiffs' does. In the Neotec 302B, the logic section is an "and" type logic which receives two "yes" signals from the voltage detectors and inverts them into "no" signals. They are in turn fed into a solid state switch which is a "nor" gate which then activates the relay. It is thus like the logic section of plaintiffs' preferred embodiment in (1) the result obtained—the production of a signal to operate the relay when the line is on hold, (2) in its mode of operation—two "yes" signals produce a derivative signal from the gate, and (3) in the means utilized to perform this function—solid state switching equipment. It differs from the preferred embodiment in the particular solid state switching equipment used.

In the Neotec 302B unit, the relay is operated by the logic section to close switch contacts to place music on the line which is on hold in a manner substantially identical to that of the preferred embodiment of the patent in suit.

It is this Court's opinion that plaintiffs' valid claims (1), (3), (8), (12), (13) and (14) cover defendants' Neotec 302B and that defendants' model is substantially equivalent to plaintiffs' invention. Neotec 302B is, therefore, guilty of infringing on plaintiffs' patent.

## IV. COUNTERCLAIM

Defendants have counterclaimed for unfair trade practices, complaining that plaintiff Carrier wrongfully obtained some of their documents and used them to compete unfairly with defendants. Defendants' evidence, like their pleading, was nothing more than vague suspicions that plaintiff must

**1190**

have come by information concerning defendants' products through some sinister means. The documents complained of were Carrier publications with no copyright and no suggestion that they were in any way intended to be confidential. The paucity of evidence on the counterclaim convinces this Court that it is patently without merit.

## V. ATTORNEYS' FEES

Both parties argued that this was an exceptional case and requested attorneys' fees should they succeed. 35 U.S.C. § 285. The only thing particularly exceptional about this case was the time and effort needed to grasp the complex facts involved. This Court does not feel that an award of attorneys' fees to the plaintiffs is justifiable in the present case.