**49 CCPA**

**Application of Sidney DILNOT.**

**Patent Appeal No. 6774.**

United States Court of Customs and Patent Appeals.

April 13, 1962.

Lewis D. Konigsford, Chicago, Ill., and Max Wall, Washington, D. C., of counsel, for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office regarding appel-

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

lant's application for a patent on "Light Weight Aerated Concrete." Six claims reciting a method of making this material were allowed by the examiner. The sole issue is the patentability of article claims 10–13 and 20 in view of the Fraser patent, Re. 23,228, issued May 9, 1950.

Claim 10. is representative and reads as follows:

"10. An article of manufacture comprising a form retaining self sustaining body of indurated, dense calcium silicate hydrate matrix, said body having in the dry state an apparent density of about 15 to 40 pounds per cubic foot and comprising substantially from about 16 to about 70 per cent of its volume as small spherical macroscopic voids, and containing from about one-fourth pound to five pounds substantially non-reactive fiber per cubic foot contributing to the transverse strength of the body, the fiber ranging in length between about three-tenths to about two and one-half centimeters, said body having a transverse strength in excess of one hundred pounds per square inch."

The application, much amended, relates to certain calcium silicate hydrate materials said to be useful as insulating or structural materials.[1]

It appears to be well known that calcareous materials such as lime will react with siliceous materials such as silica or sand when mixtures of these are heated in the presence of moisture. For example, common "sand-lime bricks" are made by such a process. Apparently, such bricks have an undesirably high density for some purposes.

Appellant discloses that calcium silicate hydrate materials with desirable physical characteristics, particularly, low density, high transverse strength, and resistance to passage of both heat and water, can be prepared by incorporating 0.25 to 5 pounds of a non-reactive fiber per cubic foot of final dry product plus a quantity of a stable preformed acqueous foam into the usual calcareous-siliceous-aqueous reaction mass, and heating this mixture in molds in the usual manner.

The specification as filed contained the following description of appellant's claimed article:

"Therefore, the product to which this invention relates is an aerated calcium silicate hydrate product containing a small amount of asbestos and/or cellulose fibers and characterized by a high percentage of non-communicating gas-filled cells, and having an apparent density on a dry basis of between about 15 pounds per cubic foot and about 40 pounds per cubic foot, * * *"

By an amendment, entered without objection by the examiner, appellant cancelled the above description and substituted for it the following statement:

"The products of this invention are self-sustaining bodies of a dense calcium silicate hydrate matrix having distributed therein macroscopic spherical voids, and fibers at a distribution density of about .25 to 5 pounds per cubic foot of the body, the bodies having an apparent density on a dry basis of between about 15 to 40 pounds per cubic foot."

It is said by appellant that the added fibers increase the transverse strength of the final product by distributing local stresses and strains over a larger volume of product. The suggested asbestos or cellulose fibers should range in length from 0.3 to 2.5 centimeters and should have a diameter not exceeding one millimeter.

[1]. At oral argument, appellant stated that the claimed products are widely used as roof decking materials.

The "non-communicating gas-filled cells" or "macroscopic spherical voids" in the final product account for its relatively low density. Apparently each individual gas bubble in the stable preformed foam becomes a "cell" or "void" in the final product. Suitable foams are prepared by incorporating a gas, usually air, into a dilute aqueous solution of a foaming agent such as a "hydrolyzed protein."

The Fraser patent discloses production of a strong, form-retaining, moisture-resistant, low-density heat insulating material by heating a mixture of finely divided lime and silica in the presence of a "very large volume of water" and a quantity of "fine spiculated fibers" of asbestos or cellulose. The resulting hydrated calcium silicate is said by Fraser to be "characterized by a loose, open, fibrous structure, in which the fibers are randomly arranged and separated or spaced apart by a system of fine, continuous, capillary air spaces." Apparently the hydrated calcium silicate is capable of forming needle-like or fibrous crystals, and, in being formed from lime and silica, is encouraged to assume this crystal form by the presence of the spiculated dispersed fibers of asbestos or cellulose which should range in length from 0.001 to 0.2 centimeters and which are said to "present free, freshly fractured surfaces" which are "active as incipient centers for the crystallization of the fibrous crystal-forming reagents," i. e., lime and silica.

Example II of Fraser appears to be representative and describes production of a final product with an apparent density of 11 pounds per cubic foot, 2.2 pounds of which is asbestos fiber.

The examiner rejected all of the appealed claims as "being unpatentable over Fraser." The examiner stated, without apparent dispute by appellant, that the product of Fraser's Example II falls "within the range of 16–70 percent of voids" as set forth in the appealed claims. With regard to the differences in fiber lengths and void shapes in the articles disclosed by Fraser and those claimed by appellant, the significance of which appears to be the main point at issue, the examiner stated:

"* * * Applicant has failed to show anything critical to result from his range of fiber lengths (which includes 0.3 centimeters) when the fibers of Fraser may have a length of 0.2 centimeters. Nor is anything critical seen in applicant's spherical voids compared to the elongated voids of the reference."

The board sustained the examiner's rejection. Noting that appellant urges the significance of the spherical character of the voids in his claimed product, the board stated:[2]

"We find no use of the term 'spherical' in describing the voids, in this application as filed. Rather, we find them described only as 'independent non-communicating air or gas-filled cells' * * *, as opposed to acknowledged prior art voids 'in the form of interconnecting capillaries,' * * *. Appellant is not, therefore, in a favorable position to urge patentability on the basis of the said term. Moreover, Fraser, in describing his product, distinguishes his voids from ones that are 'completely surrounded or occluded' (column 13), as we have noted above, and as having certain advantages with respect to them (column 4, lines 21–26), and thus has a clear teaching of the noncommunicating type of voids, and of the results they will give in the fibered product he discloses."

The board also stated:

"We do not believe that the claimed fiber length of three-tenths of a centimeter patentably distinguishes from the reference length of two-tenths of a centimeter."

---

2. See footnotes 3 and 4 for the portions of columns 4 and 13 of the Fraser patent relied on here by the board.

In resolving the issues before us, we first turn our attention to the solicitor's contention that the word "spherical," used to describe the voids, is not properly in the appealed claims because such word is not disclosed in the specification as filed. Although it is true that "spherical" is disclosed only in an amendment to the original specification, this amendment was entered by the examiner without objection and the board considered this matter only to the extent of commenting that "appellant is not, therefore, in a favorable position to urge patentability on the basis of said term." Under these circumstances, we must accept the specification as amended, and consider the term "spherical" in the claims as being properly disclosed in the specification. We cannot affirm the board's rejection of the appealed claims on a basis which both the examiner and the board failed to assert as a reason for rejecting the claims when those claims were under consideration by them.

For the purpose of this discussion, we will accept as a fact that appellant's insulating material not only contains macroscopic spherical voids but also includes fibers which were introduced into the calcium silicate hydrate matrix primarily for the purpose of strengthening the structure, and we will assume all advantages claimed by appellant for his product are present. We must remember, however, that under consideration here is appellant's *product* and not the method of producing it. We note this at the outset of our discussion because obviously the method of making appellant's product is greatly different from that which Fraser employs in producing his product.

With these factors in mind, we shall discuss the teachings in the Fraser reference. First, there is no question that Fraser discloses insulating material constructed of calcium silicate hydrate. However, it is true Fraser's matrix contains microscopic intercommunicating capillary voids, whereas the voids in appellant's structure are occluded macroscopic spheres. Although these structures are quite different, Fraser teaches more concerning this structural feature. In this connection, Fraser, in contrasting his product with the prior art, states:[3]

"* * * Upon completion of the crystallization and growth of the crystals and subsequent removal of the residual water from between them, and from any water-bearing gels between them (which is in fact observed to be the case) the mass will present innumerable voids or air spaces, between the fibers, (and through the gel films) which are continuous and capillary in character and intercommunicating, rather than completely surrounded or occluded, by a solid, such as the continuous bond or wall structures which are characteristic of and inherent in the structures of insulating materials of the prior art."

Although there is no indication that these prior art products are constructed of calcium silicate hydrate, the suggestion that the voids are "completely surrounded or occluded" is unavoidable. Further suggestions of constructing insulating materials with occluded voids are revealed in Fraser, such as:[4]

"* * * Though the air spaces are small, they are nonetheless occluded or surrounded by solids and, hence, conducive to transmission of heat by convection of the gases within them, radiation across them, and conductivity around and through their marginal surfaces. * * *"

Thus far we have a teaching of insulating material made of calcium silicate hydrate with voids and a further teaching that the voids of insulating material might be noncommunicating and completely occluded. Whether the prior art's occluded voids were spherical or

3. Column 13, lines 9–22 of the Fraser patent.

4. Column 4, lines 21–26 of the Fraser patent.

some other shape, we do not deem significant.

Next to consider is the question of the other element of appellant's combination, the fibers. Undoubtedly his fibers "contribute to the transverse strength of the body" as he contends. It is equally clear that the function of Fraser's fibers is primarily as a construction aid in the formation of the needle-like crystals of hydrated calcium silicate. However, Fraser's teaching does not stop at this point. He goes on to say that these fibers will also add to the strength of the material, stating:

"* * * The strength of the resulting integrated filamentary system is the cumulative inherent tensile strength of the crystals themselves, and of the organic or inorganic fibers which served as nuclei in the fibrous crystalline formation."

Further, in describing another aspect of his invention, Fraser states:

"On the other hand, it is found that by incorporating certain mineral substances, which are both fibrous and capable of undergoing gel formation and retaining their needle-like or fibrous form, such as chrysotile asbestos, a dispersed intra-knit structure of fibrous hydrated calcium silicate crystals and fibrous asbestos crystals may be developed, constituting a fine continuous fibrous structure, throughout the mass, having an inter-knit integral relationship between both kinds of fibers and the gel structure which is strong, of small specific volume and mass, resistant to high temperatures and of random arrangement, consonant with the preservation of the fine, loose, open characteristics of the fibrous structure of the mass as a whole, *and also of the aggregate compressive and tensile strengths of both ultimate individual fiber components, per se.*" [Emphasis ours.]

Appellant contends that Fraser's fibers, because of their short length, would not add to the transverse strength of the product as appellant's longer fibers do. This contention is not persuasive in view of the fact that there is only a one-tenth centimeter difference between appellant's and Fraser's range of fiber lengths. Even though it is true, as appellant argues, that this very small difference occurs at the top of Fraser's range and at the bottom of appellant's, it does not seem to us that it would be beyond the ordinary skill of one skilled in this art, with the teachings of Fraser, to ascertain the proper diameter and length of fibers so that they will be most effective in contributing to the strength of the insulating material.

Further, appellant argues that Fraser's fibers cannot impart strength to the mass because, during the process, the fibers are beaten and thereby lose their fiber consistency. However, Fraser clearly states that this treatment is accorded the fibers so as to disengage them from their bundle formation, but they are not destroyed as fibers. The specification in this connection states:

"* * * The net result of such treatments is to disintegrate the bundles of spicules or fiber content of the commercial grades of asbestos into substantially their ultimate spicules, but without destroying their fibrous characteristics of length relative to their cross-sectional dimensions."

Since appellant does not claim that any difference in density exists between his product and that of Fraser, no consideration of that element per se is warranted. Appellant does contend, however, that although he and Fraser achieve low density, he maintains this characteristic along with other advantageous properties which we have already noted. However, Fraser claims these same advantages for his product. He states:

"It is, therefore, an object of the present invention to provide an improved type of insulating materials which may be applied to high temperature surfaces, which shall be

**950**

form-retaining, and which shall also be of low heat conductivity and low apparent density, and of which the entire insulation may be composed. It is also an object to provide an insulating material which shall be strong when dry and also resistant to moisture, with minimum loss or reduction of its other desirable properties. Other objects will appear from the following disclosure."

We find nothing in the record either in the nature of a qualitative or quantitative test which would establish the superior properties of appellant's product in comparison with Fraser's and thereby refute the obviousness which is apparent here.

The specific limitations of claim 10 either read upon the Fraser specification, some of which we have already noted, or are not critical, or find no support in appellant's application, such as the volume limitation reading: "and comprising substantially from about 16 to about 70 percent of its volume as small spherical macroscopic voids." Even if this limitation was supported in the specification, it is completely without significance since we fail to comprehend how a mass having 16 percent of its volume in voids could also be classed as what is herein referred to as a "low" density product.

For the above reasons we *affirm* the rejection of claim 10 and, since we find nothing that is patentably distinguishable from Fraser in claims 11, 12 and 13, we *affirm* their rejection also. The rejection of claim 20, which is by and large a product claim, also is *affirmed* for the same reasons as claim 10, even though a method step is included in this claim. The addition of a method step in a product claim, which product is not patentably distinguishable from the prior art, cannot impart patentability to the old product. In re Moeller, 117 F.2d 565, 28 CCPA 932; In re Lifton, 189 F.2d 261, 38 CCPA 1119; In re Shortell, 173 F.2d 993, 36 CCPA 1013.

·Affirmed.