**Application of Russell M. LUCK and Gordon C. Gainer.**

**Patent Appeal No. 8842.**

United States Court of Customs and Patent Appeals.

April 26, 1973.

W. D. Palmer, Pittsburgh, Pa., attorney of record, for appellants; Blair R. Studebaker, Pittsburgh, Pa., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred

E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

■ This appeal is from the decision of the Board of Appeals, adhered to on reconsideration, affirming the rejection of all the claims of appellants' application, serial No. 772,439, filed October 25, 1968, for "Lamp Coating," as unpatentable under 35 U.S.C. § 103 over Pipkin [1] in view of Crissey et al. [2] and Boyd. [3] We affirm.

### The Invention

The invention relates to an external coating for an incandescent lamp envelope (e.g. a Christmas tree lamp) which is adapted to both indoor and outdoor use and may be applied by a dip-coating process. The claims are drawn to the resultant coated glass envelope, claim 1 being representative:

1. A hollow light-transmitting lamp-bulb-shaped glass member adapted to surround a source of radiations, a coating carried on the external surface of said glass member, said coating comprising a mixture of:

(a) a polymer consisting essentially of polymethylmethacrylate having a tack point temperature of at least 170°C. and an inherent viscosity of at least 0.44;

(b) from 0.1% to 10% by weight of said polymethylmethacrylate of an organofunctional silane having organic functional groups and silicon functional groups, organic functional groups of said silane reacted with said polymethylmethacrylate and silicon functional groups of said silane reacted with the surface of said glass member to couple said polymethylmethacrylate to said glass member;

(c) from 2% to 20% by weight of said polymethylmethacrylate of an additive organic substance which is at least substantially transparent, has a boiling temperature at atmospheric pressure of at least 250°C., and is completely soluble in said polymethylmethacrylate polymer within the temperature range of from -40°C to 170° C.; and

(d) said coating having been affixed to said glass member by applying thereon a liquid organic solvent having dissolved therein said polymer, said organofunctional silane and said additive organic substance, and said coated glass member thereafter being baked.

Dependent claims 2–9 define limitations such as specific silanes in (b), organic substances in (c), or coloring substances. Independent claim 10 is drawn to the preferred embodiment, 0.3–3% of component (b) and 5–15% of component (c).

### The Prior Art

The primary reference Pipkin discloses glass lamp bulbs externally coated with a lacquer composition which may be based on methacrylate esters. The coating is applied in a mixture of organic solvents, the solvents then being removed.

Crissey et al. disclose methylmethacrylate polymer coatings, pigmented or clear, for ceramic articles, wherein 10–50% by weight (based on the weight of the polymer) of a plasticizer is included. The correlation is set forth between plasticizer and physical properties of the coating, such as cracking, crazing, flexibility and durability. A solvent is em-

1. U.S. 2,781,654, issued February 19, 1957.

2. U.S. 2,934,509, issued April 26, 1960.

3. U.S. 3,082,183, issued March 19, 1963.

ployed in application and removed by air-drying or baking.

Boyd, though directed to size compositions for glass fibers rather than coatings for light bulbs, teaches the use of a coupling agent to promote adhesion to the glass fibers of the polymeric coating, which may consist primarily of polymethylthacrylate. Organic silanes are described as suitable agents, with the nature of organic radical not being critical "except the greater the degree of compatibility with the resinous material, the greater the coupling power between the resinous material and the grass surface." In these particular compositions the silane coupler is present in amounts of 0.-8–3.5% by weight, the polymer 1–7% and the aqueous carrier 75–98%.

### The Rejection

The examiner considered it obvious to modify the basic coating of Pipkin by including the silane coupler of Boyd to improve adhesion and the plasticizer of Crissey et al. to improve the physical characteristics of the coating. An affidavit submitted in an attempt to establish criticality for the upper limit of 10% for the silane in the present coating was found to be unpersuasive. Moreover, determination of optimum amounts of silane for a particular coating was considered within the realm of routine experimentation for one of ordinary skill in the art.

The process limitation set forth in part (d) of claims 1 and 10 was not regarded as significant with respect to patentability of the claimed article for two reasons. First the organic solvent vehicle was no longer present in the product per se and second, an affidavit purporting to demonstrate the difference between the present coating and a coating using an aqueous vehicle provided no actual comparisons thereof.

In sustaining, the board agreed that appellants had failed to show that the use of a somewhat smaller ratio of sil-

ane to methacrylate (Boyd using a minimum of 11.4%) was significant. On reconsideration, the observation was added that "[i]t is a routine matter to determine optimum proportions for a given silane." The correspondence of appellants' ingredient (c) to conventional plasticizers was noted, a fact made evident by a review of the specification. On the matter of the process limitation, the board stated:

* * * Insofar as the coated glass is concerned, it is immaterial whether the coupling agent was carried in water or in an organic solvent, since the carrier is no longer present in the finished article. In any event, we consider it obvious to use an organic solvent, because this is the vehicle in Pipkin and in Crissey et al.

### OPINION

Appellants rest their case for unobviousness on the amount of silane coupler employed in the lamp coatings and the method of application, as set forth in the process limitation. It is urged that nowhere in the prior art is it suggested to use a silane coupler in the proportions employed by appellants or to apply a coating containing such coupler in an organic solvent. The disclosures of Boyd are said to lead only to the use of much greater amounts of the silane in an aqueous vehicle.

We cannot accept appellants' contentions. The function of the silane in improving adhesion of polymeric material to a glass substrate was known, as was the effect of the plasticizer on the physical properties of the coating. Under § 103 not only are the teachings of the prior art taken into consideration but also the level of ordinary skill in the pertinent art. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966). In the present case, we must agree with the Patent Office that the determination of optimum amounts of the silane to achieve its recognized effect would lie within the am-

bit of ordinary skill in the art. The relevant affidavit of the coinventors evidences no more than routine testing to ascertain the most favorable proportions for this particular application. No critical upper limit is established. No unexpected result is demonstrated. Hence we find no basis for patentability in the amount of silane coupler.

■ As for the method of application, it is well established that product claims may include process steps to wholly or partially define the claimed product. See In re Brown, 459 F.2d 531, 535, 59 C.C.P.A. —— (1972) and the case cited therein. To the extent these process limitations distinguish the *product* over the prior art, they must be given the same consideration as traditional product characteristics. In the present case, we cannot agree with the Patent Office that the absence of the carrier in the final product renders the carrier immaterial. The method of application could well result in a difference in the coated article, regardless of the fate of the solvent.

But we do find that the Patent Office has established a prima facie case of obviousness for the product even with full weight being given to the process limitation. The Pipkin and Crissey et al. references specifically teach the use of an organic solvent. Hence such a solvent is an obvious alternative to the aqueous carrier of Boyd, no criticality having been taught by Boyd for the combination of silane and water.

Appellants' affidavit alleging that the use of an aqueous vehicle would result in an "extremely poorly adherent and unsatisfactory" coating fails to provide the rebuttal evidence necessary to overcome this prima facie case. As pointed out by the examiner, no comparative tests are presented for evaluation. Accordingly, on the record before us, the process limitation adds no distinguishable characteristic to the claimed product.

The decision of the board is affirmed.

Affirmed.