Opinion for the court filed by Circuit Judge DYK.
Dissenting opinion filed by Circuit Judge NEWMAN.
DYK, Circuit Judge.
SmithKline Beecham Corporation and SmithKline Beecham, P.L.C. (collectively “SmithKline”) brought suit against Apotex Corporation, Apotex Inc., and Torpharm, Inc. (collectively “Apotex”) for infringement of SmithKline’s patent, U.S. Patent No. 6,113,944 (“’944 patent”). Apotex moved for summary judgment, arguing that the ’944 patent was invalid. The district court granted summary judgment to Apotex. We agree that the claims of the ’944 patent are invalid and thus affirm.
BACKGROUND
This case presents the question whether SmithKline’s product patent for paroxetine, U.S. Patent No. 4,721,723 (filed Oct. 23, 1986) (“ ’723 patent”), anticipated its ’944 product-by-process patent claiming paroxetine made by an allegedly novel process. SmithKline’s ’723 patent claimed a pharmaceutical product aimed at treating depression. In SmithKline’s own words, the “ ’723 patent disclose[d] a pharmaceutical composition in tablet form containing paroxetine.”[1] J.A. 63. The ’723 patent *1314 also disclosed that the product is “usually presented as a unit dose composition containing from 1 to 200 mg, more usually from 5 to 100 mg, for example 10 to 50 mg such as 12.5, 15, 20, 25 or 30 mg.” ’723 patent, col. 5,11. 53-56.
In 1992, SmithKline obtained approval from the Food and Drug Administration (“FDA”) to market crystalline paroxetine hydrochloride, which it began to sell under the trade name Paxil®. SmithKline then filed various other related patent applications, including application No. PCT/EP94/04164, on December 14, 1994, which eventually matured into the ’944 patent. The ’944 patent contained the following two product-by-process claims:
Claim 1. A pharmaceutical composition in tablet form containing paroxetine, produced on a commercial scale by a process which comprises the steps of: a) dry admixing paroxetine and excipi-ents in a mixer to form a mixture; or b) dry admixing paroxetine and excipi-ents, compressing the resulting combination into a slug material or roller compacting the resulting combination into a strand material, and milling the prepared material into a free flowing mixture; and
c) compressing the mixture into tablets. Claim 2. A pharmaceutical composition in tablet form according to claim 1 containing an amount of paroxetine selected from 10 mg, 20 mg, 30 mg, 40 mg and 50 mg, wherein the amount of paroxetine is expressed as the free base, produced on a commercial scale by a process which comprises the steps of:
a) dry admixing paroxetine and excipi-ents in a mixer to form a mixture; or b) dry admixing paroxetine and excipi-ents, compressing the resulting combination into a slug material or roller compacting the resulting combination into a strand material, and milling the prepared material into a free flowing mixture; and
c)compressing the mixture into tablets using a single punch or rotary tablet machine.
J.A. 483-84 (Certificate of Correction).
On March 31, 1998, Apotex, a generic drug manufacturer and defendant here, submitted an Abbreviated New Drug Application (“ANDA”) to the FDA, seeking approval to market a generic version of Paxil®. In connection with its ANDA, Apotex filed a so-called “paragraph IV certification,” which is a statement by the applicant that designated patents claiming either the drug or a use of the drug at issue are invalid or will not be infringed by the applicant. 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (2000). Apotex’s paragraph IV certification claimed that the ’944 patent was invalid. Pursuant to 35 U.S.C. § 271(e)(2), which makes submitting an ANDA an act of infringement, SmithKline brought suit against Apotex, alleging infringement of the ’944 patent. Apotex counterclaimed that the ’944 patent was invalid and in due course moved for summary judgment of invalidity.
In its decision, the district court held the ’944 patent anticipated and thus invalid. The district court appeared to view the question of anticipation as turning on the scope of the ’944 patent, namely whether the patent should be viewed as claiming paroxetine without regard to the process by which it was made or whether the process steps were to be treated as claim limitations. The district court perceived a conflict in this respect between our decisions in Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565 (Fed.Cir.1991) (which the district court viewed as holding that the process steps were not claim limitations) and Atlantic Thermoplastics Co., Inc. v. Faytex Corp., 970 F.2d 834 (Fed.Cir.1992) (which the district court viewed as holding that *1315 the process steps were claim limitations). The district court concluded that it was bound to follow the earlier Scripps decision, finding that Scripps required it to “evaluate the validity of the [’944 patent’s] claims by reference to the products claimed therein, without the process limitations of those claims.” J.A. 61. Because the ’723 patent disclosed tablets containing paroxetine, including in the dosages specified in claim 2 of the ’944 patent, the court determined that the ’723 patent anticipated the ’944 patent.
In holding the ’944 patent anticipated, the district court found that the product claimed by the ’944 patent was the same product disclosed by the ’723 patent, despite SmithKline’s arguments that the paroxetine tablets claimed by the ’944 patent were different because they lacked a pink hue, did not contain spherical granules, and had a different content uniformity. The court stated that these characteristics were “not required by the patent claims or specification” and that the “product characteristics now cited by SmithKline are insufficient to distinguish the product of the ’944 Patent from the products claimed in the ’723 Patent.” J.A. 64-65. The court therefore granted Apotex’s summary judgment motion. Pursuant to Fed.R.Civ.P. 54(b), the court entered a separate judgment with respect to the invalidity of the ’944 patent. SmithKline timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
DISCUSSION
On appeal, SmithKline argues that the district court improperly “ignored the process limitations of the two product-by-process claims in the ’944 patent” when it determined validity. SmithKline’s Br. at 17, 23-24, 27. In other words, if the district court had treated the process steps recited in the ’944 patent as claim limitations, it would have found that the ’723 patent did not anticipate the ’944 patent, or that there was a genuine issue of fact over whether the ’723 patent disclosed those process limitations.
SmithKline misunderstands the nature of anticipation. As set forth below, once a product is fully disclosed in the art, future claims to that same product are precluded, even if that product is claimed as made by a new process.
I
A product-by-process claim is “one in which the product is defined at least in part in terms of the method or process by which it is made.” Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 158 n., 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) (quoting D. Chisum, Patents § 8.05, at 8-67 (1988)). While the patent statute does not provide for product-by-process claims, the courts have long recognized the appropriateness of such claims. See, e.g., In re Thorpe, 777 F.2d 695, 697 (Fed.Cir.1985); In re Brown, 59 C.C.P.A. 1036, 459 F.2d 531, 535 (1972); In re Steppan, 55 C.C.P.A. 791, 394 F.2d 1013, 1018 (1967). The purpose of product-by-process claims is to allow inventors to claim “an otherwise patentable product that resists definition by other than the process by which it is made.” In re Thorpe, 777 F.2d at 697. Thus, an inventor will not be foreclosed from the benefits of the patent system simply because a product is difficult to describe in words, or its structure is insufficiently understood. Today, however, product-by-process claims are used by inventors even if the invention could have been described independent of the process.[2]
*1316 This court has previously considered the scope of product-by-process claims. In Scripps, we held that the product-by-process claims at issue were not limited by the process steps within those claims. 927 F.2d at 1583. There, the patent concerned a protein, Factor VIIT.C, essential to blood clotting. Id. at 1568. The patent contained product-by-process claims directed at the product made in accordance with a particular process, also claimed in the patent. Id. at 1570. The court found that Factor VIII:C that was produced by a different process would nonetheless infringe the product-by-process claims because:
In determining patentability we construe the product as not limited by the process stated in the claims. Since claims must be construed the same way for validity and for infringement, the correct reading of the product-by-process claims is that they are not limited to product prepared by the process set forth in the claims.
Id. at 1583.
A year later this court decided Atlantic Thermoplastics. There, we held that the process steps in a product-by-process claim do serve as claim limitations. 970 F.2d at 846-47. The patent in Atlantic Thermoplastics concerned shock absorbing shoe innersoles. Id. at 835. The patentee argued that the defendant had infringed its product-by-process claim. Id. at 836. Finding that the accused products were made by a different process than that claimed in the patent’s product-by-process claim, the court determined that the patent did not extend to cover the product as made by any process. Id. at 846^47. This court stated that “[i]n light of Supreme Court caselaw and the history of product-by-process claims, this court acknowledges that infringement analysis proceeds with reference to the patent claims. Thus, process terms in product-by-process claims serve as limitations in determining infringement.” Id.
A sharply divided court denied rehearing en banc of Atlantic Thermoplastics, with four judges dissenting in four separate opinions. See 970 F.2d 834, rehearing en banc denied, 974 F.2d 1299 (concurring opinion), 974 F.2d 1279 (dissenting opinions). Judge Newman, joined by Judges Rich and Lourie, urged that the panel in Atlantic Thermoplastics had incorrectly adopted a blanket rule that the process steps of a product-by-process claim should be automatically treated as claim limitations. 974 F.2d at 1282-83. In their view, the process steps should sometimes be treated as claim limitations and sometimes not, depending on the “class of claim” at issue. Id. at 1284.
Some commentators, like the district court here, have perceived a conflict between Scripps, where the court construed the product-by-process claims without reference to the process steps, and Atlantic Thermoplastics, where the court read the process steps as claim limitations.[3] We need not address this contro *1317 versy here. The issue here does not turn on how broadly or narrowly we construe the ’944 patent’s claims, for it is undisputed that the product that is the subject of the patent’s claims is paroxetine. Rather the issue is whether the ’723 patent anticipated the ’944 product-by-process patent, when the ’723 patent broadly claimed paroxetine without regard to the process by which it was made.[4] Thus, the ultimate issue is simply whether the prior art disclosure of a product precludes a future claim to that same product when it is made by an allegedly novel process.[5]
II
Regardless of how broadly or narrowly one construes a product-by-process claim, it is clear that such claims are always to a product, not a process. It has long been established that one cannot avoid anticipation by an earlier product disclosure by claiming the same product more narrowly, that is, by claiming the product as produced by a particular process. This was the exact issue in In re Thorpe. There, the patent concerned a composition that was used in carbonless copy paper systems. 777 F.2d at 696. The composition was known in the prior art, but was previously made using zinc dibenzoate. In a product-by-process claim, Thorpe claimed the same composition made by a process that used zinc oxide and benzoic acid, rather than zinc dibenzoate. The court upheld the PTO’s rejection of the claim. Id at 698. It held that “[i]f the product in a product-by-process claim is the same as or obvious from a product of the prior art, the claim is unpatentable even though the prior product was made by a different process.” Id at 697. In re Thorpe has never been overruled and has been followed for many years by the PTO.[6] The current MPEP states:
[Even] though product-by-process claims are limited by and defined by the process, determination of patentability is based on the product itself. The patent-ability of a product does not depend on its method of production. If the product in the product-by-process claim is the same as or obvious from a product of the prior art, the claim is unpatentable even though the prior product was made by a different process.
MPEP § 2113 (8th ed., Rev. 2, May 2004) (quoting In re Thorpe, 777 F.2d at 698).
At the time of In re Thorpe, the rule as articulated was hardly new. Long before In re Thorpe, our predecessor court, the Court of Customs and Patent Appeals, consistently held that product-by-process claims could not validly claim products already known in the art. See In re Fess- *1318 mann, 489 F.2d 742, 744-45 (C.C.P.A. 1975); In re Johnson, 55 C.C.P.A. 1463, 394 F.2d 591, 594-95 (1968); In re Stephens, 52 C.C.P.A. 1409, 345 F.2d 1020, 1023 (1965) (“We think it well settled that the presence of process limitations in product claims, which product does not otherwise patentably distinguish over the prior art, cannot impart patentability to that product.”); In re Dilnot 49 C.C.P.A. 1015, 300 F.2d 945, 950 (1962) (“The addition of a method step in a product claim, which product is not patentably distinguishable from the prior art, cannot impart patentability to the old product.”); In re Moeller, 28 C.C.P.A. 932, 117 F.2d 565, 567 (1941) (“[T]he article itself must be inventive and patentably distinct from such articles disclosed in the prior art.”); In re Ewert, 22 C.C.P.A. 1262, 77 F.2d 498, 499 (1935); In re Brawn, 22 C.C.P.A. 1239, 77 F.2d 362, 363 (1935); In re Harvey, 21 C.C.P.A. 1155, 71 F.2d 200, 201 (1934).
This rule is also supported by earlier Supreme Court cases. For example, in Cochrane v. Badische Anilin & Soda Fabrik, 111 U.S. 293, 4 S.Ct. 455, 28 L.Ed. 433 (1884) (“BASF ”), natural alizarine was already known in the art. Id. at 311, 4 S.Ct. 455. However, BASF obtained a patent covering artificial alizarine, as produced by a bromine reaction process. Id. at 296, 111 U.S. 293. The accused infringer, Cochrane, then sold artificial alizarine made by a different, sulfuric acid reaction process. Id. at 309, 4 S.Ct. 455. The Court reasoned that if the BASF patent were construed to cover the product itself, it would be invalid because the product was old. Id. at 311-12, 4 S.Ct. 455. The Court stated that “[wjhile a new process for producing it was patentable, the product itself could not be patented, even though it was a product made artificially for the first time....” Id. at 311, 4 S.Ct. 455. As the Atlantic Thermoplastics panel recognized, the BASF court thus held that “a patent applicant could not obtain exclusive rights to a product in the prior art by adding a process limitation to the product claim.” Atlantic Thermoplastics, 970 F.2d at 841 (citing BASF, 111 U.S. at 311, 4 S.Ct. 455); see also Tri-Wall Containers, Inc. v. United States, 187 Ct.Cl. 326, 408 F.2d 748, 750-51 (1969), cert. denied, 396 U.S. 828, 90 S.Ct. 78, 24 L.Ed.2d 79 (1969) (following BASF, and stating that “the addition of a method step in a product claim, which product is not patent-ably distinguishable ' from the prior art, cannot impart patentability to the old product”). This understanding of BASF has been recognized by leading commentators. See, e.g., 3 Chisum on Patents § 8.05[3] (2003 ed.) (citing BASF for the proposition that “[e]ven through a product may be claimed in terms of the process of making it, the product still must be new in structural terms in order to meet the novelty requirement.”). Other Supreme Court cases have reached the same conclusion. See Gen. Elec. Co. v. Wabash Appliance Corp., 304 U.S. 364, 373, 58 S.Ct. 899, 82 L.Ed. 1402 (1938) (“Although in some instances a claim may validly describe a new product with some reference to the method of production, a patentee who does not distinguish his product from what is old except by reference, express or constructive, to the process by which he produced it, cannot secure a monopoly on the product by whatever means produced.”); Wood-Paper Patent, 23 Wall. 566, 90 U.S. 566, 596, 23 L.Ed. 31 (1874).
As this history of cases from the Supreme Court, our court, and our predecessor court make clear, anticipation by an earlier product patent cannot be avoided by claiming the same product more narrowly in a product-process claim. It makes no difference here whether the ’944 patent’s product-by-process claims are construed broadly to cover the product made by any process or narrowly to cover *1319 only the product made by a dry admixing process. Either way, anticipation by an earlier product disclosure (which disclosed the product itself) cannot be avoided. While the process set forth in the product-by-process claim may be new, that novelty can only be captured by obtaining a process claim. We agree with the district court’s conclusion that the ’723 patent disclosure anticipated the identical product claimed by the ’944 patent even though that product was produced by an allegedly novel process.[7]
Ill
In the district court, the parties differed on a second issue, that is, whether the product produced by the process claimed in the ’944 patent was, in fact, a different product than that disclosed in the ’723 patent. If those product-by-process claims produced a different product than that disclosed by the ’723 patent, there would be an argument that the ’723 patent disclosure did not anticipate. In re Luck, 476 F.2d 650, 653 (C.C.P.A.1973). On this appeal, in response to Apotex’s argument that the issue had been waived by failure to include it in the opening brief, SmithKline did not point out in its reply brief where the issue had been presented in its opening brief. Questioned by this court at oral argument as to whether this second issue has been properly preserved on appeal, SmithKline urged that it had raised this issue on appeal and was challenging the district court’s finding regarding the novelty of the product claimed by the ’944 patent. We conclude that this issue has been waived for failure to brief it on appeal.
Our law is well established that arguments not raised in the opening brief are waived. See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1320-21 n. 3 (Fed.Cir.2005). SmithKline’s opening brief focused on the perceived conflict between Scripps and Atlantic Thermoplastics to the exclusion of arguments that the product produced by the allegedly novel process was novel. Indeed, SmithKline argued that “this Court should address only the issue that provided the basis for the district court — its incorrect interpretation of the product-byproeess claims of the ’944 patent.” SmithKline’s Br. at 30. SmithKline failed to include in the Argument section of its opening brief an argument that, contrary to the district court’s finding, the product claimed in the ’944 patent is itself different from that disclosed in the ’723 patent. To be sure, there are various places in its opening brief where SmithKline alluded that the paroxetine tablets claimed in the ’944 patent were different from tablets disclosed in the prior art and expressed its disagreement with the district court’s determination that the product produced by the ’944 patent was not new. In its Argument section, SmithKline stated “there were numerous factual disputes between the parties, including the scope and content of the prior art, and the unexpected improvement of the claimed invention over the prior art.” SmithKline’s Br. at 19. Similarly, on page 27 of its brief, Smith-Kline stated:
Here, the district court held- that “the product of the ’944 Patent cannot be distinguished from the paroxetine tablets in the prior art .... ” (A64.) Accordingly, although SB’s disagrees with that *1320 determination, if the district court was determined to follow Scripps, it should have then considered the process limitations of the product-by-process claims of the ’944 patent as essential limitations in determining validity.
SmithKline’s Br. at 27 (emphasis added).[8] In a footnote to this sentence, SmithKline further noted that the ’944 patent’s tablets have a “significantly reduced tendency to pink, and have a different ‘fingerprint’ than tablets made by a [prior art] wet granulation process. The district court erroneously believed it did not need to consider such differences because they were not literally recited in the claim. This was an error of law.” Id. at n. 8. This footnote is the only statement that even approaches a substantive argument on novelty in the entire Argument section of SmithKline’s opening brief.
We find that these mere statements of disagreement with the district court as to the existence of factual disputes do not amount to a developed argument. See, e.g., Anderson v. City of Boston, 375 F.3d 71, 91 (1st Cir.2004) (“When a party includes no developed argumentation on a point ... we treat the argument as waived under our well established rule.”); Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d Cir. 2001) (“It is a settled-appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”) (internal quotation marks omitted); United States v. Elder, 90 F.3d 1110, 1118 (6th Cir.1996) (same); Laborers’ Int’l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir.1994), cert denied, 513 U.S. 946, 115 S.Ct. 356, 130 L.Ed.2d 311 (1994) (“An issue is waived unless a party raises it in its opening brief, and for those purposes ‘a passing reference to an issue ... will not suffice to bring that issue before this court.’ ”) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir.1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1671, 118, L.Ed.2d 391 (1992)); United States v. Dunkel, 927 F.2d 955, 956 (7th , Cir.1991) (“A skeletal ‘argument’, really nothing more than an assertion, does not preserve a claim.... Especially not when the brief presents a passel of other arguments .... Judges are not like pigs, hunting for truffles buried in briefs.”).
Further, arguments raised in footnotes are not preserved. See Cross Med. Prods., Inc., 424 F.3d at 1320-21 n. 3 (holding that an argument raised in a footnote in an opening brief was waived as not properly raised); Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368, 1375 n. 4 (Fed.Cir.2005) (finding that an argument raised in a footnote in an opening cross-appeal brief and then more fully in the reply brief, was not properly raised); Graphic Controls Corp. v. Utah Med. Prods., 149 F.3d 1382, 1385 (Fed.Cir.1998) (finding that an argument raised in a footnote which in turn referenced the full argument in the appendix was not preserved) (citing Fed. R. of App. P. 28(a)(6) which then stated that “[t]he argument [in the appellant’s brief] must, contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities ... and parts of the record relied on .... ”).[9]
*1321 Therefore, SmithKline has not established that the district court erred in its ultimate judgment holding the ’944 patent anticipated by the ’723 patent.
CONCLUSION
For the foregoing reasons, the decision below is affirmed.

AFFIRMED

COSTS
No costs.

. The '723 patent claimed, among other things, an "anti-depressant pharmaceutical composition comprising an effective anti-depressant amount of crystalline paroxetine hydrochloride hemihydrate and a pharmaceuti-cally acceptable carrier." '723 patent, col. 10, 11. 39-43.

. See 3 Chisum on Patents § 8.05[2][c] (2003 ed.) (explaining that the Patent and Trademark Office ("PTO”) has rejected the "necessity rule” which permitted product-by-process claims only in cases where the product was otherwise undefinable; instead, the PTO has *1316 opted to allow product-by-process claims so long as the definiteness requirement is met).

. See Trs. of Columbia Univ. v. Roche Diagnostocs GmbH, 126 F.Supp.2d 16, 31 (D.Mass.2000) (noting that after Scripps and Atlantic Thermoplastics, the district court is left in the unenviable position of choosing the better rule); DeKalb Genetics Corp. v. Northrup King Co., No. 96 C 50169, 1997 WL 587492, *2 (N.D.Ill. Aug.14, 1997) (finding that Scripps and Atlantic Thermoplastics are "in seeming conflict”); Tropix, Inc. v. Lumigen, Inc., 825 F.Supp. 7, 8 (D.Mass.1993) (noting the "disagreement” between Scripps and Atlantic Thermoplastics); see also 3 Chisum on Patents § 8.05[1][b] ("Federal Circuit panel decisions in 1991 and 1992 differed over whether a product-by-process claim can be infringed by a product not made by a specified process.”); Conflicts in Federal Circuit Patent Law Decisions, 11 Fed. Cir. B.J. 723, 765 (2002) (describing controversy).

. The '723 patent also contained a separate process claim for the preparation of the pa-roxetine; however, this claim has not been implicated here. See ’723 patent, col. 10, 11. 36-38.

. Although we have previously held the '723 patent invalid, SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1346 (Fed.Cir. 2005), it can still, of course, anticipate a later product patent. By virtue of publication, the '723 patent has become prior art. 1 Chisum on Patents § 3.06 (2003 ed.) ("A United States patent is published on the date it is issued and thereby becomes a printed publication within the meaning of Section 102(a) as well as a patent.”).

.The 1987 revision of the PTO's Manual of Patent Examining Procedure (“MPEP”) stated the rule for product-by-process claims as follows: "When the prior art discloses a product which reasonably appears to be either identical with or only slightly different than a product claimed in a product-by-process claim, a rejection ... is appropriate.” Atlantic Thermoplastics Co., Inc., 974 F.2d at 1288 (denial of rehearing en banc) (quoting MPEP § 706.03(e) (5th ed., Rev.6, Oct. 1987)) (Newman, J., dissenting). Later revisions of the MPEP contain the identical quote. See, e.g., MPEP § 2113 (6th ed., Rev.3, July 1997); MPEP § 2113 (7th ed., Rev.1, Feb. 2000); MPEP § 2113 (8th ed., Rev.1, Feb. 2003).

. Contrary to the dissent’s suggestion, the court does not hold that a claim to a product is never limited by process limitations. We simply hold that a prior art disclosure of a product precludes a future claim to that same product, even if it is made by an allegedly novel process. We take no position on whether a product-by-process claim is construed with reference to the process steps.

. In various other places, SmithKline noted its disagreement with the district court's decision and stated in conclusory fashion that factual disputes "should have precluded the district court from entering summary judgment.” See, e.g., SmithKline’s Br. at 2, 13-14.

. As we held in Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed.Cir. 1990), this court nonetheless has discretion to consider arguments that are not properly raised, in the opening brief. But here, as in Becton, we see no reason to exercise that discretion.