ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| AECOM Technical Services, Inc. | ) | ASBCA No. 62800 |
| | ) | |
| Under Contract No. W912DY-15-R-ESP7 | ) | |

APPEARANCES FOR THE APPELLANT:      William D. Edwards, Esq.
                                                                 Taft Stettinius & Hollister
                                                                 Indianapolis, IN

                                                                 Brandon E. Dobyns, Esq.
                                                                 Taft Stettinius & Hollister
                                                                 Dayton, OH

                                                                 Halden R. Schwallie, Esq.
                                                                 Ulmer & Berne LLP
                                                                 Cleveland, OH

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                                                 Engineer Chief Trial Attorney
                                                                 Edward J. McNaughton, Esq.
                                                                 Margaret P. Simmons, Esq.
                                                                 Robert I. Moore, Esq.
                                                                 Engineer Trial Attorneys
                                                                 U.S. Army Engineer District, Huntsville


OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant, AECOM Technical Services, Inc. (AECOM), requests $681,469.70 in proposal development costs, after the government decided not to issue a task order to AECOM for work at Buckley Air Force Base [AFB], Colorado.[1]  We conducted a four-day hearing.  For the reasons set forth below, we deny the appeal.

FINDINGS OF FACT

In May 2015, the government awarded Indefinite Delivery/Indefinite

---

[1] *See* app. br. at 1-2, 16, 21.

Quantity (IDIQ) Multiple Award Task Order Contract, Contract No. W912DY-15-D-0040 (MATOC III) to AECOM.[2]  *AECOM Technical Servs., Inc.*, ASBCA No. 62800, 21-1 BCA ¶ 38,009 at 184,594.  The MATOC states that "[t]he objective of this acquisition is for the design, construction, and operation of energy savings projects to help meet mandated energy savings goals established in the Energy Policy Act of 1992." *Id.*  In July 2015, the government issued a "Request for Proposal (RFP), W912DY-15-R-ESP7, Buckley AFB [Air Force Base], CO" to "All Energy Savings Performance Contracting (ESPC) III MATOC Contractors."  *Id.*

The MATOC refers to AECOM as an energy service company (ESCO).[3]  The MATOC provides:

> **C.5.3 Preliminary Assessment.**  After receiving the [contracting officer's] approval, the ESCO shall perform the Preliminary Assessment. *The Preliminary Assessment cost can only be recovered through an award of any eventual Task Order or through the Government's option to obtain ownership of submitted documentation.*
>
> . . .
>
> **C.5.4  Preliminary Assessment Report** - The ESCO shall submit a Preliminary Assessment Report to the Government, which sets out the merits, expected technical feasibility, level of projected energy savings, economics, and estimated price of the project. . . .  *The Government will not be liable for any costs associated with Preliminary Assessment Report audits or preparation of the Preliminary Assessment Report unless the project addressed by the Preliminary Assessment Report later becomes a TO [task order] award.*
>
> . . .
>
> **C.5.5  Feasibility Study.** If the ESCO and the Government determine that the Preliminary Assessment indicated sufficient potential and both parties agree that they would consider the project identified in the survey, then the KO [contracting officer] will send a letter to the ESCO accepting the Preliminary Assessment and *the ESCO, at the ESCO's risk may conduct and develop a feasibility study/proposal.*

---

[2]*See* December 22, 2023 Stipulation of Uncontested Facts (Stip.) ¶ 3.
[3] R4, tab 6 at GOV 100 § C.1.1.

The Feasibility Study/Proposal shall be submitted for review and approval in accordance with DOE/FEMP format, or DID002 with KO approval. If the ESCO determines after beginning an effort that the effort has no potential, the ESCO may cancel the project and send a letter to the KO indicating the reasons for the cancellation. The ESCO shall meet with Government personnel to discuss the cancellation if required to do so by the KO. *If the KO determines that the project is not feasible for any reason including but not limited to financial, technical, contractual, savings determination, installation mission, or organizational issues, then the Government will not be subject to any costs associated with the feasibility study unless the Government exercises its option to obtain ownership of the submitted documentation.* The Feasibility Study shall be submitted with the Proposal as one submittal, combining sections C.5.5 and C.5.6.[4]

In September 2015, the government issued to AECOM "Solicitation W912DY-15-R-ESP7, Energy Savings Performance Contract (ESPC), Buckley AFB, CO," informing AECOM that it "ha[d] been selected as the Energy Savings Performance Contractor for the new ESPC Buckley AFB project." *AECOM*, 21-1 BCA ¶ 38,009 at 184,594. The government authorized AECOM "to proceed with Preliminary Assessment (PA) development and submission for the new ESPC project at USAF Buckley AFB." *Id.* In February 2016, the government "authorize[d] AECOM to proceed with the IGA [Investment-Grade Audit][5]/Feasibility Study, Design, and Price Proposal submission to include detailed cost and pricing data, for the Energy Conservation Measures (ECM) [] for the ESPC project at Buckley AFB, Denver, CO." *Id.* In March 2016, the government "authorize[d] AECOM to proceed with the IGA/Feasibility Study, Design, and Price Proposal submission to include detailed cost and pricing data" for additional ECMs. *Id.*

On November 22, 2016, the contracting officer informed AECOM by letter that "the Government has decided to not pursue this ESPC project, and has no plans to exercise its option to obtain ownership of any submitted documentation pertinent to this project."[6] The letter provides no explanation for that decision, and the government did not issue any task order to AECOM.[7] On August 26, 2020, AECOM presented to the contracting officer a certified claim "for recovery of $681,469.70 in costs AECOM has

---

[4] R4, tab 6 at GOV 106-07 (emphasis and alterations added).
[5] App. br. at 6; gov't br. at 7.
[6] R4, tab 14 at GOV 221.
[7] *See* app. br. at 16-17.

incurred in connection with the work performed to develop and design the Project."[8] *Id.* The contracting officer denied the claim.[9] AECOM noticed this appeal, filed a five-count complaint, and seeks "appropriate costs related to [its] performance of additional work under the Contract that was uncompensated because of the cancellation."[10]

DECISION

*Contract Implied-in-Law*

AECOM says that the government breached a contract implied-in-law.[11] We do not possess jurisdiction to entertain claims of breach of an implied-in-law contract. *See Shavers-Whittle Constr.*, LLC, ASBCA No. 60025, 16-1 BCA ¶ 36,246 at 176,835.

*Project Cancellation*

AECOM says that the government "acted arbitrarily and capriciously by failing to examine the relevant data and provide a rational explanation for cancelling the Project."[12] AECOM also alleges that "by cancelling the Project with no evidence of a reasoned determination regarding the Project's viability, [the government] has acted arbitrarily and capriciously and, thus, breached its duty of good faith and fair dealing and destroyed AECOM's reasonable expectations, which were established and reinforced repeatedly by [the government] regarding the Project."[13] AECOM says further that the government "did not articulate a reason for the cancellation until well into this appeal."[14] Finally, AECOM says that "[o]nce AECOM reached the latter stages of the IGA phase and was close to a [government]-assured [task order], AECOM never envisioned that it would spend the time and resources that it did in direct response to government directions and not be awarded a [task order]," and that "[i]t would be contrary to law and equity for ESPC contracts to have such a loophole that would allow [the government] to obtain such benefits without providing any compensation to an ESCO."[15]

Section C.5.5 of the MATOC provides that "the ESCO, at the ESCO's risk may conduct and develop a feasibility study/proposal," and that "[i]f the [contracting officer] determines that the project is not feasible for any reason including but not limited to financial, technical, contractual, savings determination, installation mission, or

---

[8] R4, tab 4 at GOV 16.
[9] R4, tab 5 at GOV 56-57; stip. ¶ 21.
[10] App. br. at 2.
[11] App. br. at 17; addendum to brief at 1-3; app. instanter resp. at 2-5 & n.2.
[12] Compl. (Count I) at 4 ¶ 23, 7 ¶ 34.
[13] Compl. at 7 ¶ 34 (alteration added).
[14] App. br. at 21.
[15] Compl. (Count II) at 6 ¶ 30 (alterations added).

4

organizational issues, then the Government will not be subject to any costs associated with the feasibility study unless the Government exercises its option to obtain ownership of the submitted documentation."  Consequently, AECOM assumed the risk that, as happened, its proposal efforts would not bear fruit.  And although the MATOC requires the ESCO to indicate to the contracting officer its reasons for cancellation of a project, the MATOC *does not* require the government to state a reason for cancelling a project.  AECOM says that "it was entirely the base's recalcitrance that caused the cancellation of the project,"[16] and the government offers its own set of reasons.[17]  Even accepting AECOM's explanation for the cancellation, we determine that "base recalcitrance" falls within the broad description (our emphasis) "not feasible for *any reason including but not limited to* financial, technical, contractual, savings determination, installation mission, or organizational issues"; particularly, "organizational issues."  Moreover, AECOM acknowledges that the government stated that it had "no plans to exercise its option to obtain ownership of any submitted documentation pertinent to this project,"[18] and does not contend that the government exercised that option.  For all these reasons, AECOM's challenge to the cancellation of the project fails, and AECOM fails to demonstrate that it is entitled to any compensation.

*Good Faith and Fair Dealing*

AECOM says the government breached its duty of good faith and fair dealing, pursuant to "the MATOC itself,"—including to cooperate with AECOM and not withhold superior knowledge—essentially by causing AECOM to continue efforts to obtain a task order without sharing with AECOM the government's alleged understanding that it would be issuing no task order to AECOM, or at least no task order that AECOM would be willing to perform; that is, a task order that included irrigation control measures favored by AECOM but, ultimately, not Buckley Air Force Base.[19]  Indeed, counsel for AECOM explained during the hearing of the appeal that AECOM's theory of recovery upon this issue is that "the government did not operate in good faith and fair dealing with AECOM when going through the task order award process."[20]  AECOM points to "the repeated assurances by [the government] that it was going to award a task order for not only this work, but also a second task order for a larger, follow-on project."[21]

---

[16] App. br. at 20; *see also* addendum at 2.

[17] Gov't br. at 22-23.

[18] App. br. at 16.

[19] *See* app. br. at 5-7, 9, 12-14, 17-19; addendum at 2; compl. at 4; *see also* compl. (Count III) at 7.  In the context of this appeal, "irrigation" refers to activities such as watering the grass lawns on Buckley Air Force Base.  *See* tr. 1/165.

[20] Tr. 1/49.

[21] App. br. at 17-18.

The implied duty of good faith and fair dealing cannot form the basis for new contractual terms, especially when the terms would be inconsistent with the terms of an express contract. *Siemens Gov't Techs., Inc.*, ASBCA Nos. 62601, 62602, 22-1 BCA ¶ 38,136 at 185,246 (May 24, 2022); *aff'd*, No. 2022-2240, 2024 WL 2043201 (Fed. Cir. May 8, 2024) (non-precedential). Sections C.5.3, C.5.4, and C.5.5 of the MATOC provide that, generally speaking, AECOM would recover proposal development costs only if the government issued a task order or, if it did not issue a task order, nevertheless "exercise[d] its option to obtain ownership of [] submitted documentation."[22] Because neither occurred, AECOM is precluded from recovering its proposal development costs, even taking into account (1) the implied duty of good faith and fair dealing, and (2) the back-and-forth between the government and AECOM that AECOM alleges occurred here.[23] *See id.*; *cf. IMS Eng'rs-Architects, P.C. v. United States*, 87 Fed. Cl. 541, 552 (2009) ("Despite any oral representations to the contrary, the parties are bound by the provisions of their IDIQ contracts.").

Specifically with respect to the doctrine of superior knowledge, AECOM says that:

> Had AECOM known of the discussions going on behind the scenes within the Government, it would have not devoted the time, energy, and financial resources pursuing a doomed project. This is most acutely seen in the comments from [the Buckley AFB Energy Manager], where he routinely and repeatedly told individuals with [the government] that the base would not accept any project other than a small project –

---

[22] We understand that the compensation that AECOM seeks in this appeal consists of essentially the proposal development costs described in sections C.5.3, C.5.4, and C.5.5 of the MATOC. *See* app. br. at 2 (requesting "costs related to . . . performance of additional work under the Contract that was uncompensated because of the cancellation"); *id.* at 16 (describing "$459,968.52 of costs in the Buckley IGA job with another $50,000 to $60,000 incurred by AECOM's subcontractors."); *id.* at 19 (describing "unreimbursed costs in developing the multiple feasibility studies provided to the Government in support of the project"); app. instanter resp. at 11 (requesting "$681,469.70, together with costs incurred in making demands [] for payment.").

[23] To the extent that AECOM's contentions in this appeal can be interpreted to set forth a claim that the government's solicitation and receipt of AECOM's proposal created an implied-in-fact contract with the government requiring the government to fairly and honestly consider that proposal, we do not possess jurisdiction to entertain such a "bid protest"-type claim. *Siemens*, 22-1 BCA ¶ 38,136 at 185,245.

> one where it had already been proven it would not cash flow.[24]
>
> . . .
>
> Also here, [] the government had continually told AECOM that not only did it expect to award a task order for the work proposed, it also wanted to engage in a larger follow-on project after the first task order had been awarded.[25]

The government says that AECOM has neither asserted a superior knowledge allegation in its complaint, nor presented a superior knowledge claim to the contracting officer.[26] For the Board to possess jurisdiction to entertain a contractor's claim, the contractor must have first presented the claim to a contracting officer. *CDM Constructors, Inc.*, ASBCA No. 59524, 15-1 BCA ¶ 36,097 at 176,238. Moreover, AECOM has the burden of establishing our jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Nevertheless, AECOM has not responded to the government's assertion that it has not presented its superior knowledge claim to the contracting officer, and does not point us to any portion of its August 26, 2020 claim to the contracting officer where that claim is presented. Indeed, AECOM did not allege a superior knowledge claim in its February 9, 2021 complaint, and having reviewed AECOM's claim to the contracting officer, we see no claim in that 40-page, single-spaced document that the government withheld from AECOM knowledge that no viable task order would be forthcoming. Because AECOM has not presented its superior knowledge claim to the contracting officer, we do not possess jurisdiction to entertain that claim. *See Aviation Training Consulting, LLC,* ASBCA No. 63634, 24-1 BCA ¶38,498 at 187,131 (citing *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1377 (Fed. Cir. 2023)).

*Wrongful Conversion*

AECOM alleges that the government "breached the contract when it violated the implied duty of good faith and fair dealing and MATOC III, Section C.26.4, by

---

[24] That a project "cash flow" means "that the period of financing and the pay back associated with that financing does not exceed the statutory limit of 25 years." App. br. at 3; *see* gov't br. at 7 ¶ 9.

[25] App. br. at 8, 19.

[26] Gov't br. at 35; gov't reply at 7.

converting AECOM's ECM designs and work product for its own use."[27]  In its addendum to its post-hearing initial brief, AECOM states that Count IV:

> is a claim for a breach of Section C.26.4 of the MATOC. AECOM previously argued in response to the motion to dismiss that this breach was tortious in nature, and retains this position.[28]

AECOM acknowledges, without challenge, the contracting officer's November 22, 2016, statement that "the Government . . . has no plans to exercise its option to obtain ownership of any submitted documentation pertinent to this project,"[29] and nowhere in its post-hearing briefing does AECOM develop its conclusory and unsupported claim that the government converted AECOM's designs and work product for its own use.  We find that claim waived.  *Sungjee Constr. Co.,* ASBCA Nos. 62002, 61170, 23-1 BCA ¶38,400 at 186,598; *BES Constr., LLC*, ASBCA No. 60608, 19-1 BCA¶ 37,455 at 181,989 (citing cases).

*Implied-in-Fact Contract and Quantum Meruit*

AECOM alleges:

> AECOM should be compensated under an implied-in-fact contract. It is only fair and just that [the government] pay for services rendered and accepted by it. [The government] received a benefit in the form of services, and AECOM should not be denied the ordinary principles of equity and justice by [the government] refusing to pay for services it received. Under the doctrine of *quantum meruit*, AECOM is entitled to receive compensation for the value of those services provided to [the government]. [The government] reaped substantial benefits from AECOM's work, which is evident from the Base's own publications concerning its implementation of ECMs and recent energy savings.[30]

In its post-hearing briefing, AECOM advances no claims pursuant to an implied-in-fact contract or the doctrine of *quantum meruit*.  Consequently, any such claims are

---

[27] Compl. (Count IV) at 7.

[28] Addendum at 3.

[29] App. br. at 16.

[30]  Compl. (Count V) at 8 ¶ 36; *see also* compl. at 4 ¶ 21 (invoking *quantum meruit*).

waived.  *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

<u>CONCLUSION</u>

We find the parties' other arguments unnecessary to address.  For the foregoing reasons, the appeal is denied.

Dated:  January 15, 2025

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62800, Appeal of AECOM Technical Services, Inc., rendered in conformance with the Board's Charter.

Dated:  January 16, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9